## WILLIAM G. FORD vs. THE STATE OF MARYLAND.

In a trial on an indictment for murder, a verdict simply of *"guilty,"* is insufficient, because, by the act of 1809, ch. 138, sec. 3, the jury *must* ascertain *in their verdict* the *degree* of the crime, whether it be murder in the *first* or *second degree.*

Jurors cannot testify in relation to the motives upon which they joined in the verdict; if, through mistake or partiality, they deliver an improper verdict, the court may, *before it is recorded,* desire them to reconsider it, but the jury cannot be allowed to make any alteration *after* the verdict is recorded.

After the foreman, *speaking for the whole panel,* finds a proper verdict, which *is recorded,* and the whole panel is called on to *hearken to it* as the court hath recorded it, and they have so *hearkened to it,* no objection being made by any juror, or the counsel for the State or prisoner, such verdict is the verdict of the whole panel, and it is then *too late* for any of the jury to alter or amend it, and also too late to *poll* the panel.

The object of a *poll* is to call on *each* juror to answer for himself, and in his *own language,* and where, in a trial for murder, the verdict was simply *"guilty,"* and on being polled, the *foreman alone* answered "guilty of murder in the first degree," and *each* of the *others* answered "guilty," *without specifying the degree in words,* such verdict is *insufficient,* because at *no time* did *all* the jury find the prisoner *"guilty of murder in the first degree."*

By the Bill of Rights of this State, *every man* has the *right* to "a speedy trial by an impartial jury, without whose *unanimous consent* he ought not to be found guilty;" *unanimity* is *indispensable* to the sufficiency of a *verdict.*

Whatever assumes the solemnity of a *judgment* of a court of record, is part and parcel of the *record,* and examinable in the *appellate tribunal* on a writ of error.

Whilst the appellate court cannot find the *facts,* yet the judgment of the inferior court on those facts is a *matter of law,* and where the facts are found by the court or jury below, it is the proper and legitimate province of the appellate court to see that the inferior court has pronounced correctly the *law* as applicable to the facts.

Where the judge of an inferior court, in his *decision,* embodied in the transcript of the record sent to the appellate court, *sets forth* the *facts* occurring upon the rendition of a verdict in a trial for murder, and these facts show that *all* the jury *did not* at *any time* find the prisoner "guilty of murder in the first degree," the judgment of the court, upon such verdict, sentencing the prisoner to be hanged, may be reviewed by the appellate court on writ of error, notwithstanding the *docket entries* of the court below, both original and as *extended* in the transcript, show a verdict in due form, of "guilty of murder in the first degree."

Ford *vs.* The State.

In such a case, the appellate court may look to the misprision of the clerk, who is but the hand of the court, and whose duty it is, in contemplation of law, to record nothing but the proceedings of the court.

Where there has been, in the eye of the law, no valid and sufficient *verdict*, there must be a *new trial;* in such a case there is a *mistrial,* and the indictment being good, the prisoner may be tried anew on the same indictment.

ERROR to the Criminal Court of Baltimore.

The plaintiff in error was indicted for murder. The indictment contains but one count, charging the prisoner with the wilful murder of Thomas H. Burnham, by shooting him with a pistol. The prisoner was arraigned, and pleaded not guilty.

The transcript of the record sent to the Court of Appeals sets out the presentment, indictment, arraignment, plea, the empannelling of a jury to try the case, and then states that the jury, "upon their oath aforesaid, do say, to wit: on the fourth day of October, in the year aforesaid, that the said William G. Ford is guilty of the felony and murder above charged and imposed upon him; and thereupon, on the prayer of the counsel of the said William G. Ford, the said jury, that is to say, the said" (naming the individual jurors) "so elected, tried and sworn, as aforesaid, to say the truth of and upon the premises aforesaid, being polled and severally named, upon their oath aforesaid, do say that the said William G. Ford is guilty of the felony and murder above charged and imposed upon him, and that said felony and murder is murder in the first degree."

The docket entries of the court below, which it was agreed by the State's Attorney and the counsel for the prisoner, should be incorporated into the record of the case in the Court of Appeals, as if brought up under a writ of diminution, show the following entry or entries: "Oct. 4th, 1858, Verdict, Guilty of murder. Jury polled, Guilty of murder in the 1st degree."

The prisoner, by his counsel, moved in arrest of judgment for a new trial, and also made the following motion:

"The prisoner, by his counsel, comes into court here and moves the court to strike out all of the entries made on the docket of the court in this case on the fifth day of October,

which entries are in the words and figures following, that is to say: 'Jury polled, Guilty of murder in the 1st degree;' which words here set out, were not found by the said jury, and were not on the docket of this court when the clerk ordered the jury to hearken to the record of their verdict as recorded in the said case by this court; the simple entry at that time being, 'Guilty of murder,' as the verdict of the jury; and these words lastly herein set forth, that is to say, 'Guilty of murder,' being the only words on the docket of the clerk on the day after the verdict was found, which was the evening of the 4th of October 1858, and the other words and figures hereinbefore set forth, that is to say, 'Guilty of murder in the 1st degree,' were added by the clerk of this court on the day following that on which the jury found their verdict in the said case, and on the day after the said jury had been discharged, which was an excess of authority by the said clerk, and illegal.''

The counsel for the prisoner then filed the following reasons in support of the motion in arrest of judgment:

"1st. That the jury who were empannelled to try the said case, and who did find a verdict therein, did not find of what degree of murder they found the prisoner guilty, but their verdict, as announced in the court, and as recorded by the clerk, was in these words, 'Guilty of murder.' And this finding of the jury is insufficient to enable the court to pass sentence, and therefore insufficient and void.

"2nd. Because the jury who tried the said case, and who found a verdict therein, did not unanimously pronounce a verdict in the said case of murder, and at the finding of the said verdict say further, of what degree they found the said murder, of which they had convicted said prisoner, to be, which they were required to do by the act of Assembly of this State, in such case made and provided; and the said verdict is therefore void.

"3rd. Because it is the duty and sole right of the jury who try a case of murder, to find the degree, if they convict the accused of the crime of murder, and to find the degree of which they do convict, as a part of their verdict, and to an-

nounce it as such, which was not done by the jury in this case, and therefore the verdict of the jury is void.

"4th. The jury rendered their verdict in this case on Monday evening, the 4th instant, and the verdict recorded by the clerk on that evening, was simply and only in the words, 'Guilty of murder,' and no more. These were the only words on the docket on the morning of the 5th instant, the day after the rendition and recording of the said verdict, and when the counsel for the prisoner examined the docket of this court, and saw the manner and form of the verdict, they desired the clerk to make no change of the said verdict as recorded, in any way, and he said that he would not; and they, the counsel for the prisoner, came into this court and made a motion in arrest of judgment, basing their motion on the said verdict. Since they made the said motion in arrest, they have discovered that the said clerk has added to the verdict aforesaid, 'Jury polled, Guilty of murder in the first degree,' which is no part of the verdict, and the said clerk had no right to make such addition, and the defective verdict recorded by the said clerk is not and cannot be amended by the improper and unauthorised addition of the said clerk, made as aforesaid.''

Reasons in support of the motion for a new trial were then filed, but need not be stated. The prisoner, by his counsel, then filed the following affidavits:

"*State of Maryland, City of Baltimore, to wit:*—On this 21st day of October, in the year eighteen hundred and fifty-eight, before the subscriber, a justice of the peace of the State of Maryland, in and for the city of Baltimore, personally appeared Wilson C. N. Carr, and made oath on the Holy Evangely of Almighty God, as follows, viz: that he was in the criminal court on the evening when the jury rendered their verdict in the case of the State vs. William G. Ford; that he was standing within a few feet from the seat occupied by Mr. Schley, the deputy clerk, and that the following are the facts and circumstances attending the rendition of said verdict, viz: Mr. Schley asked the jury in the usual form, 'Gentlemen of the jury, have you agreed upon your verdict?' to which they responded, 'Yes.' Mr. Schley then said, 'Who shall say for

you?' to which they responded, 'The foreman.' Mr. Schley then ordered the prisoner to stand up, and to hold up his right hand; he then addressed the jury, 'Gentlemen of the jury, look upon the prisoner, how say you, is William G. Ford, the prisoner at the bar, guilty of the matter whereof he stands indicted, or not guilty?' to this the foreman responded, 'Guilty.' Mr. Schley then said, 'Gentlemen of the jury, hearken to your verdict as the court hath recorded it, your foreman saith that William G. Ford, the prisoner at the bar, is guilty, and so you say all?' Just at this time Mr. Hack appeared in court, and asked Mr. Schley what was the verdict? He replied, 'Guilty,' and added that it was 'first degree.' Mr. Hack said, 'What did the jury say?' Mr. Schley responded, 'They said guilty.' Mr. Hack then said, 'You must only record what the jury said;' and then he demanded a poll of the jury. Mr. Schley then said to the jury, 'Gentlemen, answer as your names are called,' and, calling the foreman's name, he asked this question, 'How say you, guilty or not guilty?' to which the response was, simply, 'Guilty;' and so did each juror answer as his name was called. And the said W. C. N. Carr further makes oath, that he had a conversation with Mr. Schley, on the same evening, in the clerk's office, after the court had adjourned, in which he told Mr. Schley that the verdict was not properly taken and entered; that the jury ought to have ascertained the degree of the crime. Mr. Schley said, that it was all right; that it had been decided not to be necessary to designate the degree; a general verdict of guilty meaning, he said, guilty of the highest grade of offence. This deponent then asked Mr. Schley how, when he came to make up the full record in the case, he could insert the words, 'that the said Wm. G. Ford is guilty of the murder aforesaid, above charged and imposed upon him, and that the said murder is of the first degree?' &c.; to this Mr. Schley replied, that he was not bound by the form in *Harris' Entries,* and that he would have no trouble about making the record.

Sworn before—DANL. E. MYERS."

"On this 21st day of October 1858, in open court, in the criminal court of Baltimore city, appeared Archibald Stirling,

Jr., and makes oath that he was present in court at the rendition of the verdict in the case of Wm. G. Ford; that he has read the affidavit of W. C. N. Carr, hereto annexed, and that his recollections of the facts is the same as Mr. Carr's, except that his recollection is, that when Mr. Hack came into court and asked Mr. Schley 'What was the verdict?' Mr. Schley answered, 'Guilty generally,' and added, 'that means murder in the first degree.' Mr. Hack replied, 'What did the jury say?' and then demanded the poll. His recollection as to the question asked by Mr. Schley to the jurors, on the poll, is the same as Mr. Carr's. This deponent also says, that he knows nothing of the conversation between Mr. Carr and Mr. Schley, mentioned in the affidavit of Mr. Carr.

Oct. 21st, 1858. Sworn to in open court.

THOS. H. GARDNER, Clerk."

"Oliver F. Hack, being duly sworn in open court here, deposeth and saith, that on the evening of the rendition of the verdict in this cause, after the same had been rendered, and whilst there was some discussing going on between the jury and the court, he entered the court room, and advancing to the desk of the then acting clerk, Mr. Schley, inquired of him, Mr. S., what the verdict was? to which he replied, 'Guilty of murder.' Some person standing near remarked, at the same time, that no such verdict had been rendered; that the jury, when asked to hearken to their verdict, stated merely that he, the prisoner, was guilty, and nothing was said of murder. Mr. Schley then observed, that the verdict of guilty meant guilty of murder in the first degree. Deponent then stated to Mr. Schley that the meaning of the verdict was a matter of legal construction, and that although the verdict was recorded as guilty of murder, when it should merely have been guilty, that he must not change or affect that verdict. The poll of the jury having been asked by deponent thereupon, nothing was said to them as to the degree of the murder found by them, but, when responding to their names, they were asked to say merely whether the prisoner was guilty or not guilty, to which they severally replied, 'Guilty.' The verdict was recorded on the evening

of its rendition, stood without any addition or any qualification, and upon the application of deponent, on the next morning, that Mr. Schley should not make any change in the record, he stated that he would not. He afterwards did so, by inserting the poll as it appears.

Oct. 21st, 1858. Sworn to in open court.

THOMAS H. GARDNER, Clerk."

"I was present in the criminal court on the night when the verdict in the case of the State vs. Ford was rendered. The jury were called, and, through their foreman, rendered a verdict of 'Guilty.' I am the more certain of this, as the sufficiency of such a verdict was, at the very moment, made a subject of discussion between a professional brother and myself. Immediately after the rendition of the verdict, Mr. Hack came within the bar, and demanded the polling of the jury, when the clerk, Mr. Schley, put to each of the jury, calling them by name, the same question that he had put when the foreman answered for the whole, viz: 'How say you, is William G. Ford, the prisoner at the bar, guilty of the matter wherewith he stands charged, or not guilty?' This statement is given at the request of the counsel for the prisoner.

ROBT. D. MORRISON."

"On this 21st day of October 1858, before me, the subscriber, a justice of the peace of the State of Maryland, in and for the city of Baltimore, personally appeared Robt. D. Morrison, and made oath that the matters and facts hereinbefore stated are true, to the best of his knowledge and belief.

DANL. E. MYERS."

By order of the court, the following *certificate*, signed by all of the jury who tried the case, was filed:

"We, the undersigned, jurors empannelled and sworn to try the issue between the State of Maryland and William G. Ford, indicted at the September term of the criminal court of Baltimore, for the murder of Thomas H. Burnham, do hereby certify, that on the night of the 4th of October 1858, the jury in said cause having agreed upon their verdict, were placed in the bar to render the same. That the clerk of the court turned

Ford *vs.* The State.

to the jury and said: 'Gentlemen of the jury, have you agreed upon your verdict?' Our foreman answered, 'Yes.' Clerk, 'Who shall say for you?' The jury said, 'Our foreman.' The clerk said, 'William G. Ford, stand up, and hold up your right hand; Gentlemen of the jury, look upon the prisoner at the bar, what say you, is Wm. G. Ford, the prisoner at the bar, guilty of the matters whereof he stands indicted, or not guilty?' Our foreman answered, 'Guilty as charged in the indictment.' The clerk said, 'Gentlemen of the jury, hearken unto your verdict as the court hath recorded it; your foreman saith that Wm. G. Ford, the prisoner at the bar, is guilty of the murder whereof he stands indicted, and so you say all?' Mr. Hack, the prisoner's counsel, then asked that the jury be polled; whereupon the clerk said to our foreman, in our hearing, 'Daniel D. Hobbs, is William G. Ford, the prisoner at the bar, guilty of murder in the first degree, or not guilty?' Our foreman said, 'Guilty.' The question was then put to each of us, by name, 'What say you, guilty or not guilty?' We each of us, in turn, answered, 'Guilty;' thereby meaning, intending, and most assuredly understanding our verdict as 'Guilty of murder in the first degree.' "

By order of the court, also, the following affidavit of the clerk who received the verdict, was filed in court:

"Be it known, that on this 8th day of October, A. D., 1858, before me, the subscriber, a justice of the peace of the State of Maryland, in and for the city of Baltimore, personally appeared Wm. Louis Schley, and made oath in due form of law, that he was the clerk who received the verdict from the jury empannelled to try Wm. G. Ford, indicted for murder, at September term of the criminal court of Baltimore, and that the said verdict was rendered before said court on the evening of October 4th, 1858, in manner following: When the jury were placed in the bar, the following questions were asked by him, the said Wm. Louis Schley: 'Gentlemen of the jury, have you agreed upon your verdict?' 'Yes.' 'Who shall say for you?' 'The foreman.' Clerk, to prisoner, 'Wm. G. Ford, stand up, hold up your right hand'—'Gentlemen of the jury, look upon the prisoner at the bar, what say you,

is William G. Ford, the prisoner at the bar, guilty of the matter whereof he stands indicted, or not guilty?' Answer by the foreman—'Guilty.' 'Gentlemen of the jury, hearken unto your verdict as the court hath recorded it, your foreman saith that Wm. G. Ford, the prisoner at the bar, is guilty of the murder whereof he stands indicted, and so you say all?' Mr. Hack then asked that the jury be polled; whereupon the clerk, the said Wm. Louis Schley, said to the foreman, 'Is Wm. G. Ford, the prisoner at the bar, guilty of murder in the first degree, or not guilty?'—this question was put to the foreman alone—to which question the foreman, Danl. D. Hobbs, answered, 'Guilty.' The question of 'What say you, guilty or not guilty?' omitting the words 'first degree,' was put in turn to each juror of the remaining eleven, who in turn answered, 'Guilty.'            CHARLES ALEXANDER.''

The court (STUMP, J.,) filed the following opinion:

''CRIMINAL COURT OF BALTIMORE,—*State of Maryland vs. William G. Ford*—Indicted Sept'r term 1858, for the murder of Thomas H. Burnham.

''After a verdict was found, motions in arrest of judgment and for a new trial were made by Cowan and Hack, counsel for the prisoner, and assigned the following reasons, in substance, for arresting the judgment of the court:

''1st. That the jury who were empannelled, and who did find a verdict therein, did not find what degree of murder the prisoner was guilty of.

''2nd. Because the jury who found the verdict did not unanimously pronounce a verdict in said case of murder, nor find the degree of murder, as they were required by the act of Assembly to do.

''3rd. Because it was the duty and sole right of the jury, who try a case of murder, to find the degree of which they convict the prisoner.

''4th. The jury rendered their verdict on Monday evening the 4th inst., and the verdict then recorded by the clerk was simply in the words, guilty of murder, and no more; on the succeeding morning after the jury had been discharged and the prisoner was absent, contrary to the request of his counsel,

inserted on the docket of the court the words: 'Jury polled—guilty of murder in the first degree;' without the order of the court or authority of law, &c.

"The prisoner's counsel also move the court to strike out the words, 'Jury polled—guilty of murder in the first degree;' which were written on the court docket, the morning after the rendition of the verdict, by the clerk of the court, &c.

"The reasons assigned for the motion for a new trial are in substance:

"1st. Because the verdict is contrary to the evidence.

"2nd. Because the verdict is contrary to the weight of evidence.

"3rd. Because of irregularity in empannelling the jury.

"4th. Because one of the jurors who was empannelled to try the said cause was not of the legal age to act as a juror.

"5th. Because a juror who tried the case was disqualified to try the case by having expressed an opinion previously.

"The reasons filed for a new trial were not argued before the court, and no evidence offered to the court to prove any of the facts stated in them, wherefore the court had no grounds for considering them otherwise than as abandoned by the prisoner's counsel.

"The motion to arrest the judgment, and the preliminary one to strike out the entries of 'Jury polled—guilty of murder in the first degree,' (which seem to be inseparable,) were argued at length and relied upon by the counsel for the prisoner.

"Mr. Cowan, in favor of the motion, argued, that the act of 1809, ch. 138, sec. 3, enacted, that murder in the State of Maryland shall consist of two kinds, viz., murder in the first degree and murder in the second degree, and if the jury find any one guilty of murder in the first or second degree, they must find the degree in their verdict, otherwise the court cannot pronounce judgment on the prisoner, according to the act, which punishes murder in the first degree with death, and murder in the second degree with confinement in the penitentiary. He contended that neither the clerk nor the court could add one word to the minutes of the verdict entered as taken in the presence of the jury and the prisoner, nor subtract a word

from the verdict or minutes after the jury were discharged, nor could the jury themselves be allowed to correct any mistake in the minutes, taken by the clerk after they were discharged. In support of this doctrine, he read from 1st *Chitty Crim. Law*, and some other authorities.   The act of 1809, and the affidavits of W. C. N. Carr and others, relating to the manner and some of the facts connected with the taking of the verdict by the clerk, (Mr. Schley,) which do not correspond, in some essential particulars, with the recollection of this court, nor with the affidavit of the jurors who found the verdict, nor that of the clerk who recorded the verdict; which affidavits are filed in this court and constitute a part of this record.   Mr. Hambleton replied on the part of the State, and cited a number of authorities from text-books and reported cases, some of which the court has read, but has not time to digest them here.   Mr. Whitney closed on the part of the State, and argued that it was not required of the jury to negative the minor offences charged in the indictment.   That a general verdict on an indictment is sufficient to cover the highest offence in that indictment.   If it was the intention of the jury to convict of the smaller offence, they would have so specified in their verdict, and if the jury, under the present indictment, which contained but one count embracing murder in the first degree, rendered a verdict of *guilty*, that satisfied the act of Assembly.   To this conclusion of law this court cannot assent.   The State's Attorney referred to 6 *Binney's Rep.*, 179, *White's Case;* upon examination of which it will appear that the jury found White guilty of murder *in the first degree without any* dispute.   The only question in the case of Ford is, whether the jury did or did not find him guilty of murder in the first degree.   Upon this fact in Ford's case turns all the law and evidence.   Mr. Whitney cited also 7 *Md. Rep.*, 442, *Weighorst's Case*, wherein the court say, if the jury find a person guilty of the smaller degree of murder they need not negative murder in the first degree; also case of *Sutton* in 4 *Gill*, and *Manley's Case*, 7 *Md. Rep.*, who was found guilty of an assault with intent to kill George Konig, without negativing the count for a simple assault.   But no case has been cited, or can

Ford *vs.* The State.

he found, to establish the doctrine, that where a jury find a person *guilty* on an indictment which covers murder in the first degree, murder in the second degree, and manslaughter, without specifying which offence he is guilty of, that the highest offence is found by such a general verdict, although finding him guilty of murder in the second degree or manslaughter will negative murder in the first degree.

"Mr. J. Nelson closed the argument for the prisoner, in most of which this court will concur, but not to the supposed facts upon which it is predicated. He argued, that the indictment was drawn according to the forms of the common law used before the passage of the act of 1809, and covered both degrees of murder, and it would be an arbitrary exercise of power by the court to determine what degree of murder the jury intended to find. That the jury are to find it as a fact by their verdict, (and not otherwise,) whether the offence be of the first or second degree of murder. The jury are bound, by the act of Assembly, to make a specific finding. If the prisoner, in court, had pleaded guilty, it would be the duty of the court to examine the evidence and ascertain the degree, for he could not plead guilty to the first degree. The prisoner only pleads guilty or innocent of the whole indictment, and this being the case, the jury must find in their verdict the fact and particularise the degree of murder. The proper enquiry in this case is, whether the jury have found the degree in their verdict, and if not the act of Assembly has not been gratified; nor has the court a right to find the degree instead of the jury, because the prisoner did not plead guilty. On the other hand, if the jury have determined the degree of murder *that is an end of the question.* He cited *Binney's Rep.;* 6 *Gill, Ohio* and *Missouri Reports.* He also read from 3 *Vol. British Crown Cases,* about the place where the culprit should be buried, which is no part of our law. This court accedes to all the legal part of this argument and adopts it all so far as it goes, but it does not reach or settle the main question of fact, whether the jury found the prisoner guilty of murder in the first degree or guilty of murder generally.

"In order to a clear conception of the law we are consider-

ing, it may be better to insert the whole of the 3rd sec. of our act of 1809, ch. 138, which is a copy of the act of Pennsylvania of 1794; it reads in these words:

"'And whereas the several offences, which are included under the general denomination of murder, differ so greatly from each other in the degree of their atrociousness, that it is unjust to involve them in the same punishment, therefore, be it enacted, that all murder which shall be perpetrated by means of poison, or by lying in wait, or by any kind of wilful, deliberate and premeditated killing; or which shall be committed in the perpetration of, or attempt to perpetrate, any arson, or to burn any barn, tobacco house, stable, warehouse, or other outhouse, not parcel of any dwelling house, having therein any tobacco, grain, hay, horses, cattle, or goods, wares and merchandize; rape, sodomy, mayhem, robbery or burglary; shall be deemed murder of the first degree; and all other kind of murder shall be deemed murder of the second degree; and the jury, before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder in the first or second degree, but if such person be convicted by confession, the court shall proceed, by examination of witness, to determine the degree of the crime, and to give sentence accordingly; and every person liable to be prosecuted for petit treason shall, in future, be indicted, proceeded against, and punished, as is directed in other kinds of murder, according to the degree.'

"Mr. Nelson also argued, (and cited some cases to shew,) that it was too late, upon polling the jury, to fix the degree of murder. That the jury must answer upon first being interrogated by the clerk, and then it is the prisoner's privilege to poll each man individually, to ascertain what his judgment was. The clerk had no right to put leading questions to the jury to bring out their verdict; that no man's life would be safe under such proceedings, &c.

"The court will finally proceed to consider the fact, whether the jury did or did not find the prisoner guilty of murder in the first degree, which (as Mr. Nelson says) settles the question. When the jury came into court it was late in the evening, and

Mr. Whitney, the prosecutor, was absent on account of sudden indisposition, but the court supposed he was present to attend, as usual, to the rendition of the verdict, according to the usual manner. The clerk asked the jury if they had agreed upon their verdict, and who should say for them, to which they responded they had agreed, and their foreman should say for them. Whereupon the clerk told the prisoner, calling by name, William G. Ford, to stand and hold up his right hand, and requested the jury to look upon him, and then asked the jury: 'How say you gentlemen, is William G. Ford, the prisoner at the bar, guilty or not guilty?' to which the jury answered guilty, and nothing more. Whereupon, and before any of the jury had left the bar, and whilst the prisoner was before them, Mr. Hack, one of the counsel for the prisoner, demanded that the jury should be polled, whereupon the court directed Mr. Schley, the clerk, who was taking the verdict, to ask the jury, when he polled them, whether they found the prisoner guilty of murder in the first degree or murder in the second degree; to which question, when it was put to the jury, the foreman answered for the jury, in the words, 'Guilty of murder in the first degree,' in an audible voice, and each of the remaining eleven jurors, when polled, responded 'Guilty,' without specifying the degree of murder in words.

"And thereupon, to wit, on the day and year last aforesaid, all and singular the premises, being, by the court here, seen and fully understood, it is adjudged and considered by the court here, that the said several above motions, that is to say, the said above motion in arrest of judgment, the said above motion for a new trial, and the said above motion to strike out the said above mentioned entry in the said case, on the said docket of the court here, be and the same are, each of them, overruled."

The transcript then proceeds to state, that the court passed sentence of death upon the prisoner, and sets out the judgment. To correct this judgment the present writ of error was sued out by the prisoner from the Circuit court for Baltimore city, directed to the judge of the Criminal court of Baltimore. This writ states, that: "whereas at a session of the Criminal

court of Baltimore, begun and held at the city of Baltimore, in and for said city, on the second Monday of September, in the year of our Lord, one thousand eight hundred and fifty-eight, a certain William G. Ford, was convicted and judgment and sentence passed thereon, ordering him to be hanged at such time and place as may please the chief executive of the State of Maryland to appoint.   And because in the record and proceedings, as also in the judgment and sentence of the said court, a manifest error hath happened, to the great damage of the said William G. Ford, as of his complaint has been stated, and it is right that the error, if any hath been, should be duly corrected, and full and speedy justice done to the said William G. Ford in this behalf: Therefore you are hereby commanded, that if the judgment aforesaid be therein given, then the record and proceedings aforesaid, with all things thereunto relating, to the Court of Appeals to be holden for the State of Maryland, under your hand and seal distinctly and openly you send, together with this writ, and the record and proceedings aforesaid, being inspected, the said Court of Appeals may further cause to be done therein, for the correcting that error, what of right and according to the laws and customs of the State of Maryland may be done."

The transcript then states that: "In pursuance whereof, and according to the act of Assembly in such case made and provided, a record of the judgment aforesaid, with all things thereunto relating, together with the said writ of error annexed, is hereby transmitted to the Court of Appeals accordingly." This is attested by the clerk of the Criminal court of Baltimore, and is accompanied with his certificate attested by the seal of the court, "that the aforegoing transcript is a full and true record of the proceedings in the said prosecution against the said William G. Ford."

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Wm. H. Cowan* and *Jno. Nelson* for the plaintiff in error:
The questions presented by this writ of error are:

Ford *vs.* The State.

1st. Assuming (as in point of fact was the case) that on the 4th of October, the verdict as then recorded was simply "Guilty of murder," could there have been any judgment rendered thereon?

2nd. Is the fact of alteration by the addition of the words "jury polled—guilty of murder in the first degree," on the following morning out of the presence of the prisoner, shown to this court in such a way as that it can notice and review it?

3rd. If the original verdict as rendered and recorded would not have authorised a judgment, and the fact of such alteration or amendment so appears, had the court below the power to order or authorise such amendment or alteration to be made?

1st. Does a verdict of "Guilty," or "Guilty of murder," authorise a judgment? This depends upon the act of 1809, ch. 138, and to our minds there is no clearer proposition. This indictment is at common law, and not under the statute. It may mean, therefore, under this act, either murder in the *first degree* or murder in the *second degree*. The act makes no alteration in the crime of murder as it stood at the common law, but only makes *grades* of the offence and inflicts *different punishments* for the different degrees. It says, that the jury *shall in their verdict ascertain* the *grade* of the offence, in order to guide the court in inflicting the proper punishment. The court cannot *grope about* for the punishment, or make out from inference or conjecture what degree the jury *intended* to find, but must have *upon the record* the means of ascertaining the punishment; from the record, and from *no other source,* must the court ascertain the *degree* of the crime. A general verdict of *"guilty"* and so recorded, is therefore a mere *nullity,* and this is the more apparent from the fact, that if a prisoner *pleads guilty* the court is not authorised to inflict punishment of death, but is required by *the law* to examine *witnesses* to ascertain the *grade* of the crime. If it was not the intention of the law, that a plea of *"guilty"* entered upon the record should sanction the punishment of death, how is it possible to say that a *verdict* of *"guilty"* can have that effect? Upon authority the question is *equally clear.* In every State in this

67     v. 12.

Union where a similar statute exists, the courts have uniformly held, that where the indictment is at *common law*, not describing murder in the *first degree* under the statute, the jury must, in all such cases, find the degree in *their verdict*. In *White's Case*, 6 *Binney*, 183, there is a *dictum*, by the Chief Justice of Pennsylvania, that where the indictment is under the statute, and sets out *on its face* such aggravating circumstances as to constitute murder in the *first degree*, a general verdict of "guilty" would be sufficient. But this was but an *obiter dictum*, and the distinction has been *repudiated* by the courts of every other State, who have said, that whether the indictment be at common law or under the statute, setting out on its face every circumstance of aggravation necessary to designate murder of the highest grade, still the jury must in *their verdict* ascertain the degree, and for the plain reason that *the law* so declares, and what a statute prescribes neither court nor jury can disregard. In *Dick vs. The State*, 3 *Ohio Rep.*, *N. S.*, 89, the question is ably discussed and clearly decided, and to the same effect are the decisions in 8 *Missouri*, 495, *McGee vs. The State*, and *State vs. Upton*, 20 *Missouri*. *Weighorst's Case*, in 7 *Md. Rep.*, 442, is in no way in conflict with this view of the law or with these decisions. In 3 *British Crown Cases*, 301, is a remarkable instance of how rigidly *statute regulations* in such cases are adhered to by the courts in England. There a statute had prescribed, that in passing sentence of death upon a convict, the judge should order the *remains* of the party, after execution, to be disposed of in a particular mode, and the omission of the judge to make such order in that case, was held a *fatal defect* in the judgment and it was set aside. It is clear, therefore, that if the verdict in this case had stood as it was originally rendered, "guilty of murder," simply, no valid judgment could have been rendered upon it.

2nd. The verdict, *in fact*, as originally *recorded*, was "guilty of murder" simply. The additional words, "jury polled— guilty of murder in the first degree," were added on the following morning, out the presence of the prisoner. This is apparent from every affidavit filed in the case, and from the

*opinion* of the judge himself who passed the judgment.   The question is, can this court *look* to this proof?   It is urged by the counsel for the State, that this motion *in arrest* of judgment and the writ of error, only bring up matters of error *apparent upon the record,* and that as the record which they construe to mean only the presentment, indictment, plea, issue and *verdict* as *extended* in this transcript, present no such error as that complained of, this court cannot look beyond them.   The *affidavits* in support of the motion, and the *opinion* of the judge, they say, constitute no part *of the record,* and cannot be looked to or reviewed by this court.   Is this the law?   We insist that it is not.   The laws of Maryland do not, save in some special instances, require a *record,* in the *technical* sense of the word, to be made either in civil or criminal cases. By the uniform practice of our courts, and the absence of statutory provisions requiring judicial proceedings to be enrolled on parchment or recorded, the *docket entries* constitute the only evidence or record of judicial action—these are the *records* of the courts, and such they were decided to be by the Supreme Court of the United States, in the case of *The Phil. Wil. & Balto. R. R. Co., vs. Howard,* in 13 *How.,* 332.   When therefore a verdict is rendered in a criminal case, there is no other record of it than what is written by the clerk on his docket *at the time.*   When he asks the jury to hearken to their verdict as the court hath *recorded it,* what is then written or entered by him on the docket—not what rests in the recollection of the judge—is the record.   The question presented here is, what was the condition of these docket entries at the time this verdict was rendered?   The case is in many respects a peculiar one.   It is a motion in arrest of judgment, not for any thing appearing on the face of the proceedings before the verdict was *rendered,* but for matters occurring *subsequently.* How must that be made apparent to the court below?   By *evidence,* and that *evidence* must appear to this court.   It is to be ascertained as a *fact* not by the *docket entries,* for the very purpose and object of the motion is to *correct* those entries, and if they *estop* the motion could never be made.   Affidavits were filed showing the facts as they occurred.   In what other

way could the motion be sustained? These affidavits, we insist, are a part of *the motion*, and can be looked to by this court for the purpose of ascertaining the condition of the docket entries at the time the verdict was rendered, having been filed in the proceedings of the case in the court below, and embraced in the transcript of these proceedings sent up to this court. But if these affidavits do not constitute a part of the *record*, still, the judge of the court below, in his opinion filed in the case, has *certified* to this court as a *matter of fact*, that the entry of the words "jury polled—guilty of murder in the first degree," was not made till the day succeeding the rendition of the verdict and not in the presence of the prisoner. This is surely a part of the *record*, for it is always in the power of the judge to record the *special matter*, and his finding of a *fact* put upon the record is *part* of the *record*. The finding of this *fact* by the judge below, cannot be reviewed by this court, but the *effect* of that fact as a *matter of law* is clearly a subject of review by an appellate tribunal. The *judgment* of the inferior court, or the finding of a jury upon an *issue of fact*, the parties have the right, *ex debito justitiæ*, to have upon the record, and it is the proper office of a writ of error, to remove the final judgment of the court below, for the revision of the superior court, in order that such court from the premises contained in the record of the inferior court, may either affirm or reverse the judgment, as they draw the same or a different conclusion from that which has been pronounced by the court below. 60 *Eng. C. L. Rep.*, 534, *Newton vs. Boodle.* The opinion or decision of the court below, in this case, set out in the record, ascertains the fact in regard to the docket, and when the alteration was made, and the *effect* of that fact is a *matter of law* which this court can review. None of the many cases cited by the counsel for the State, controvert this position.

3rd. The next question is, had the court power to allow or order the amendment or alteration of the docket to be made on the day following the verdict, and out of the presence of the prisoner? On this point there can be no difficulty. No such power exists. The verdict, whatever may be its effect,

must in all cases of felony and treason be delivered in *the presence* of the prisoner in open court, and cannot be either privily given or *promulgated in his absence.* ( *Chitty's Cr. Law,* 635, 636.) After the verdict is recorded the general rule is, that it cannot be *amended,* unless, indeed the *mistake appear* and be *corrected promptly.* (1 *Wat. Arch. Cr. Pr. & Pl.,* 177, *notes.*) The modern cases say, that an amendment may be made in cases where there is some note or *written memorandum* to amend by, but the judge cannot order an *amendment* from his mere *recollection* of what occurred upon the rendition of the verdict. *Lord Denman,* in the case of *Queen vs. Virrier,* 40 *Eng. C. L. Rep.,* 58, had amended a verdict upon an indictment for *perjury* by his *recollection,* but when the case was brought before him *in banc,* he said, and all the judges concurred with him, "I was of opinion that the judge must have power in a case like this to amend by his *recollection,* and it is clear, that in the present instance, the amendment was one which might be made according to the truth of the facts. But, on consideration, we think that the practice of so amending would be such a *dangerous* one, that, as a general rule of discretion, the court ought to decide against introducing it. In almost all cases of amendment there has been a written document to amend by, and a misprision which was corrected by that. But if reference is made to the *recollection* of the *judge* as an *individual,* the great *danger* and *abuse* which might result from amending under *such circumstances,* in cases which might be supposed," forbid it to be allowed. If the recorded verdict of a jury, which they have been called on to *hearken to,* as the court hath recorded it in the *presence of the prisoner,* can be amended or altered by the mere *recollection* of the judge, without any note or written memorandum or other writing to correct by, and after the jury has been discharged and out of the presence of the prisoner, then it might be truly said there would be no security for the life, property or liberty of the citizen. In the case in 3 *British Crown Cases,* 301, already referred to, the judge *omitted* in pronouncing sentence on a conviction for murder, to order that the bodies of the prisoners should be buried within the

precincts of the jail as directed by statute, but on a *subsequent day during the same term,* in the absence of the prisoner, he ordered the clause to be inserted, and it was held, that this correction rendered the sentence *illegal.* That case is a thousand fold stronger in all its particulars than the present. See also on this point, *Comyn's Dig.,* Amendment P.; 1 *Salk,* 47, *King vs. Keat; Ibid.,* 53, *Bold's Case;* 1 *Ld. Ray.,* 324, *Miller vs. Trets;* 1 *H. Bl. Rep.,* 78, *Spencer vs. Goter;* 5 *Burr.,* 2661, *Rex vs. Woodfall.*

If the above positions are correct, then clearly this judgment must be corrected. But there are also other *irregularities* which render the verdict insufficient. The affidavit of the clerk, which the judge below ordered to be *filed* in court, and thus to be made a part of the record, shows that not a single juror, when answering upon the poll, found a verdict of "guilty of murder in the first degree," as extended in this transcript, and as entered upon the docket. What is the object and meaning of a *poll* of the *jury?* It is only for the purpose of ascertaining the individual assent of each juror to the verdict as *already* given by the foreman. Who ever heard of an *independent verdict* being taken on a poll? The clerk here puts the *suggestive* question to the jury: "Is Ford guilty of murder in the first degree or not guilty?" This he had no right to do, for the law says, the *jury* shall ascertain the *degree* of the offence in *their verdict.* The clerk had no right to suggest to them this finding. But again, even if the jury on the poll could find the grade, the affidavit of the clerk shows that not a single juror so *found* in his own language, and the opinion of the judge shows that the *foreman* alone so found, while each of the other jurors said not a word of the degree of the crime. Hence there was no *unanimity* in this verdict, which is a *fatal defect.*

*J. D. Hamilton,* and *Milton Whitney* State's Attorney for Baltimore city, for the State.

The positions maintained by the State, are:

1st. That this court in the consideration of this case upon writ of error, will be strictly confined to the *record* as duly au-

thenticated, and certified by the court below, and that the *affidavits* and the *opinion* of the court below constitute no part of that record.

2nd. That upon the face of the *record* no errors are apparent, authorising this court to set aside the verdict and arrest the judgment.

Two other questions incidentally arise in the case, namely: 1st. As to the power of the court below over its own minutes or docket entries; and 2nd. As to the legal effect of a verdict of *"guilty,"* supposing that to have been the only verdict in the case.

1st. There is no particular assignment of errors in this writ, and no such assignment has been made in this court. If there were any errors *in fact*, outside of and in making up the record of the court below, either in the process or through default of the clerk, the proper mode of correcting them was by a writ of error *coram nobis*, bringing the matter before the judge who tried the case. The cases of *Bridendolph vs. Zellers*, 3 *Md. Rep.*, 325, and *Hawkins vs. Bowie*, 9 *G. & J.*, 437, clearly show, that in this State a writ of error *coram nobis* lies to correct an error *in fact* in the same court where the record is. This remedy was open to the prisoner in this case, and he should have pursued it if he wished to avail himself of any such errors. We insist then, that in the examination of this case, this court must be confined to the *record*, and look only to those facts that appear upon the record, for it is for the correction of errors *appearing upon the record* that the writ of error is allowed. That writ brings the record before this court. By that record duly and properly authenticated, this court must be strictly governed for its ascertainment of the facts of the case. It is a well settled principle, and one fully established by all the authorities, that he who impeaches the judgment of an inferior court is bound to show to a superior tribunal in what the error consists of which he complains, and that error *must appear upon the record*. It is a settled maxim, that nothing shall be averred against a record, nor shall any plea or proof be admitted to contradict it, otherwise there would be no end to disputes. Such being the settled law, we are to

consider the question, what is to be taken as the record in this case? and what is a record in the sense in which it is to be here considered? A *court of record* is, where the acts and judicial proceedings are enrolled in parchment or on paper, for a perpetual memorial and testimony; which rolls are called the records of the court, and are of such high and super-eminent authority that their truth is not to be called in question. What the law requires to be enrolled constitutes and forms the record. (3 *Bl. Com.*, 24. 2 *Arkansas Rep.*, 14, *Lennox vs. Pike.*) Upon this principle of law, the record consists, in this case, of the presentment, *capias* and return, the indictment, arraignment, plea and issue, empanneling of the jury, the finding by them, the motions by the prisoner's counsel, the judgment of the court upon the same, and the final judgment of the court upon the finding of the jury. No other papers filed in the cause are required by the law to be enrolled or recorded, and, therefore, form no part of the record. The *affidavits* filed in the case form no part of the *record:* they were but evidence introduced before the court, and upon which it was called upon to act. They are exclusively for the consideration of the court below. This court will not look into these affidavits, otherwise they would be called upon to consider the evidence and determine from the testimony, conflicting as it might be, not what the record is as duly certified by the court below, but what it should be from the evidence adduced, notwithstanding other testimony may have been introduced before the court. These affidavits are but *evidence* upon which the court below have the exclusive right to pass. They may discredit that testimony, or admit oral evidence to contradict or vary it; and when that court has once acted upon that testimony by overruling the motion, they have merely exercised a discretion vested exclusively in them, and their order only overruling the motion becomes a part of the record, and not the reasons upon which the court acted or the evidence laid before them. The authorities on this point are clear. In *Lennox vs. Pike*, 2 *Arkansas Rep.*, 14, it was held, that a statement of testimony given in the case, written out and signed by the judge below and filed in the case by the clerk, is no part of the

Ford vs. The State.

record. In *Kirby vs. Wood*, 16 *Maine*, 81, it was decided, that papers presented to a common law court, and acted on only as matter of evidence, are no part of the record, and that a writ of error lies only to correct such errors as are apparent upon the record. In *Williams's Case*, 5 *Md. Rep.*, 82, this court has said, it cannot revise on writ of error, any point or question not appearing *by the record* to have been decided in the court below. In *Godwin's Case*, 5 *Iredell*, 401, a case very similar to this, it was held, that the appellate court could not look into *affidavits* in support of a motion to set aside a verdict in a capital case, but could only decide upon *the record* presented to them. In *Mellish vs. Richardson*, 23 *Eng. C. L. Rep.*, 276, *Tindal, C. J.*, says, the proper office of a writ of error is, to remove the final judgment of the court below for the revision of the superior court, in order that such court *from the premises* contained in the record may affirm or reverse the judgment, and that these *premises* are the pleadings, the proper continuance of the suit and process, the finding of the jury upon an issue of fact, if any such has been joined, and the judgment of the inferior court, and that *all these* premises from which such judgment has been derived, the parties to the suit have the right *ex debito justitiæ* to have upon the record, but the orders or rules for amendments of proceedings made by the court in the progress of the suit, and all other interlocutory rules do not fall within the description of any part of the record. This decision was adopted in the case of *Newton vs. Boodle*, 60 *Eng. C. L. Rep.*, 534. In *Coolidge vs. Ingle*, 13, *Mass.*, 50, it is said, that neither the report of the judge of the proceedings at the trial, nor the reasons given for the opinion of the court, nor the papers and documents filed in the case, are a part of the record on a writ of error. In *Storer vs. White*, 7 *Mass.*, 448, papers filed in the case and used as evidence, were held to be no part of the record, and that the court could not take notice of them on a writ of error. In *Pierce vs. Adams*, 8 *Mass.*, 383, a copy of a note sent up with the record, was held not to be a part of the record on a writ of error. *Vandruff vs Craig, et al.*, 14 *Illinois Rep.*,

68    v. 12.

394, decides that an affidavit forms no part of a record. In *Reed vs. Marsh*, 13 *Pet.*, 153, the Supreme court decided, that the certificate of the clerk of a court, that a motion for a new trial was made, and reasons and certain papers filed on which the motion was founded, which are on the files of the court, is not a part of the record, nor do the reasons on the files of the court become a part of the record by such certificate; and in *Williams vs. Norris*, 12 *Wheat.*, 117, the same court held, that the opinion of a judge may explain the views and motives of the court, but does not form a part of its judgment, and cannot constitute a part of the record. See, also, on this point, 1 *Dev. & Batt.*, 506, *State vs. Miller;* 2 *Dev. & Battles*, 163, *State vs. Ephraim;* and 1 *Barr.*, 105, *The Commonwealth vs. Church;* in which latter case it was held, that an opinion of the court filed in a criminal cause by request, according to the provisions of the statute, is not part of the record for revision on writ of error. By the record in this case it appears, that the jury found the prisoner "guilty of murder," and upon being polled on motion of the prisoner's counsel declared and found him "guilty of murder in the first degree." This appearing by the record properly authenticated, is conclusive upon this court, and no evidence will be allowed to contradict it. A party will not be heard in relation to a matter in which he is contradicted by the record. 7 *Missouri*, 600, *Weber vs. Schmeisser.* In *Clagett vs. Simes*, 11 *Foster*, *(N. H. Rep.,)* 22, it was decided, that upon a writ of error nothing can be assigned for error which contradicts the record, and the alleged error there which was sought to be corrected, was, that the judgment against the plaintiff in error was entered up by the clerk without the authority or order of the court. The same thing was decided in 5 *Conn.*, 541, *Wetmore vs. Plant*. 3 *Dana.*, 454, *Cook vs. Conway*. 1 *Pet.*, *C. C. Rep.*, 155, *Field vs. Gibbs, et al.* 2 *Bac. Abr.*, 219.

We think, therefore, we have demonstrated that the *affidavits* and *opinion* of the court below constitute no part of this record, and that this court has no power on this writ to go behind that record. If it has such power, it can take the very life from all the courts of the State.

Ford *vs.* The State.

2nd. The only other question to be considered is, whether the *record* in this case presents any such error as will justify this court in setting aside the judgment of the court below? The only question that can be raised under this head, is the alleged insufficiency of the verdict as recorded. We insist that the verdict is in conformity to the spirit and letter of the act of 1809, ch. 138, and meets and gratifies all its requirements. The verdict is, "Guilty of murder," and upon being polled, on motion of the prisoner's counsel, they declare and find him "Guilty of murder in the first degree." The act requires, that when a party is put upon his trial, and the jury shall find him guilty of murder, they shall *ascertain*, in their verdict, whether it be murder in the first or second degree. The jury are first to find him guilty of murder, and having done so, they are then, in their verdict, to ascertain and announce whether it be murder in the first or second degree, for the information of the court, to guide them in awarding the proper punishment. No form is prescribed or laid down in which this is to be done. It is to be brought to the knowledge of the court by the jury, and is to be made a part of their verdict. This may be done upon the *polling* of the jury, or in any other way to be adopted by the court, so that it may be made a part of the verdict. Had not the prisoner, through his counsel, availed himself of the right to poll the jury, the court would have directed the jury to ascertain the degree. The court had the right to direct the jury, on the poll being demanded, to ascertain the degree, and whether directed or not, the degree being ascertained and announced on the poll, it rendered it unnecessary for the court so to move. The poll being demanded and allowed, the verdict was not complete until taken on the poll, and it required such taking of the verdict to render the record complete, and whatever was the verdict rendered on the polling, was the verdict of the jury, which the court was bound to record against the prisoner. 8 *Iredell,* 339, *State vs. John.* 3 *Johns.,* 255, *Burn vs. Hoyt.* 1 *Wend.,* 91, *People vs. Parkins.* 6 *McLean,* 186, *U. States vs. Potter.* 2 *Gilman,* 342, *Johnson vs. Howe, et al.*

Of the other questions which arise incidentally in the case,

the first is upon the motion to strike out the entry, "Jury polled, guilty of murder in the 1st degree;" and is based upon the allegation that it was not made till the morning succeeding the rendition of the verdict. The reasons in support of a motion, are no part of the record, and especially when they contradict the same, as in this case. No evidence was introduced in support of the facts set forth in this motion, and even admitting the alleged facts, they present no error. The daily minutes taken by the clerk, and sanctioned by the court, are only *memoranda* to assist in making up the records of the court. In legal contemplation, they are made under the eye of the court, and by its authority, and when not properly entered or extended, the error may be corrected. *Lord Tenterden, C. J.,* in *Rex vs. Carlisle,* 22 *Eng. C. L. Rep.,* 97, has said, it is impossible that a verdict should be recorded at the time it is given, the record of it being necessarily an act subsequent to the delivery of the verdict by a jury; that no time is fixed by law for the recording of a verdict, the practice being, that a minute of the verdict should be entered forthwith by the officer of the court, and entered of record with the other proceedings at some subsequent time, when a formal record of the whole may be required. In *Hall vs. The State,* 3 *Kelly,* 23, the verdict of the jury was written on the indictment, but was not entered on the minutes of the court at the term when it was returned, and the court, at the *succeeding term,* ordered the verdict to be entered on the minutes of the court *nunc pro tunc,* and this was held by the Supreme Court of Georgia to be *correct.* In *Mayo vs. Whitson,* 2 *Jones' Law Rep.,* 231, it was held, that a court of record has power to amend its own minutes of a *former term,* so as to set forth *truly* its own transactions, and that in such a case it was not bound by the ordinary rules of evidence, but may resort to *any proof* that is satisfactory to it. The judge there says, the court, in such a case, is entitled to draw evidence from any *pure source.* This would allow the judge below, in this case, to reject all the affidavits, and resort to his own recollection of the facts, and order the entry to be made in accordance with the truth of the facts, as they occurred. The same case de-

cides, also, that "every court of record has ample power, after a suit is determined, to *amend* its own records; that is, the journal or the memorial of its own proceedings, kept by the court or its clerk, by *inserting what is omitted*, or striking out what may have been erroneously inserted." The clerk is but the hand or the scribe of the court, and whatever he does, is the act of the court itself. The clerk's docket is the record of the court, until the record is fully extended, and every entry upon it is the statement of an act of the court, which is presumed to be made by its direction, and when so made, the same rules of *presumed verity apply* to such *docket entries* as to the record, when extended; 2 *Cushing*, 115, *Read vs. Sutton;* 1 *Cranch. C. C. Rep.*, 431, *Barnes vs. Lee;* and in *Weighorst's case*, 7 *Md. Rep.*, 450, this court has said, that the docket entries are, "in legal contemplation, made under the eye of the court, and by its authority, and when not properly entered or extended, the error may be corrected."

The other incidental question is, assuming that the verdict was simply a verdict of "Guilty of murder," and that the entry of "Jury polled, guilty of murder in the first degree," was improperly entered, was such a general verdict of guilty *sufficient* to warrant the judgment pronounced in this case? We insist that it was. Our act of 1809, is a copy of the Pennsylvania statute, and it has been decided, in that State, that a general verdict of guilty upon an indictment for murder in the first degree, under their statute, is a sufficient ascertainment of the degree to gratify the act. *White's case*, 6 *Binney*, 183. And such would seem to be the necessary construction of the language of this court in *Weighorst's case*, 7 *Md. Rep.*, 442, *Manly's case*, 7 *Md. Rep.*, 135, and *Flannigan's case*, 6 *Md. Rep.*, 167. The indictment here charges a *willful* and *malicious killing*, and the verdict of "Guilty," means that the party is guilty of the murder *as charged.*

For these reasons the State, by her counsel, insists upon an affirmance of this judgment. The objections made by the counsel for the prisoner, go not to the *merits* of the case, but are mere *technicalities*, which the ends of public justice require should be discountenanced by this court. The *affidavits,*

even if this court could look to them, are entitled to but little weight, for they are made by persons whose attention was necessarily, under the circumstances, attracted to other matters. It was at the close of an exciting and prolonged trial, at night, the court room being crowded with spectators, whose attention was directed to the prisoner, to witness the effect of the verdict upon him. Casual by-standers could not be expected, under such circumstances, to remember minutely what passed between the clerk and the jury, and, by examining their affidavits, the court will see that each differs from the other in his recollection of what then occurred.

Le Grand, C. J., delivered the opinion of this court.

This case comes before us on a writ of error sued out by the plaintiff in error, to have reversed and set aside a judgment pronounced against him in the Criminal Court of Baltimore.

From the record transmitted to this court, it appears he was indicted for the murder of a person named Thomas H. Burnham; that he was arraigned, and to the charge pleaded not guilty; that a jury was empanneled to try the case, and they being *polled*, he was, by their verdict, found *"guilty of the felony and murder above charged and imposed upon him, and that the said felony and murder is murder in the first degree."*

If this be a correct record of what actually took place, then there is clearly no error to be corrected by the judgment of this court. But it is denied there ever was rendered such a verdict by the jury sworn to try the case, and it is this allegation, on the part of the prisoner, we are now called upon to consider and decide upon.

We know nothing of the testimony adduced to the jury as to the guilt or innocence of the prisoner, nor have we any thing to do with it; that was a consideration exclusively for the court and jury that tried the case below. Our duty and authority are confined to the legal questions arising out of the record. If the record shows the accused was convicted in due form of law, the judgment of the criminal court must be affirmed, and the sentence carried into execution, unless the

executive interpose. This being the *status* of the case, we proceed to the examination of the questions presented in argument, and by the record.

Homicide at the common law is distinguishable into several kinds; into *murder, manslaughter, excusable* homicide, and *justifiable* homicide. By our acts of Assembly of 1809, ch. 138, to these distinctions of the common law is added another, namely, murder in the *first* and murder in the *second* degree, and it is to this latter sub-division the principle question for our decision owes its importance. The 3rd section of that act is in the following words:

"And whereas the several offenses which are included under the general denomination of murder, differ so greatly from each other in the degree of their atrociousness, that it is unjust to involve them in the same punishment; therefore be it enacted, that all murder which shall be perpetrated by means of poison, or by lying in wait, or by any kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempt to perpetrate, any arson, or to burn any barn, tobacco house, having therein any tobacco, grain, hay, horses, cattle or goods, wares and merchandise; rape, sodomy, mayhem, robbery or burglary, shall be deemed murder in the first degree; and all other kind of murder shall be deemed murder of the second degree; *and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder in the first or second degree; but if such person be convicted by confession, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and to give sentence accordingly,*" &c.

It is apparent, from the plain and unambiguous words of the statute, that where a party is tried before a *jury* on the charge of murder, it is the duty of the jury, if they find such person guilty of the murder, also to "*ascertain in their verdict whether it be murder in the first or second degree.*" This requirement, it was ingeniously urged on behalf of the State, could be fully gratified on an indictment like the one in the case before us, by a verdict of simply "guilty." This view,

as appears from the opinion of the judge below, was addressed to him as it has been to us. We concur with him in the opinion that the finding of the jury of only "guilty," is insufficient. The argument in its support is deduced mainly from the fact that the charge, as laid in the indictment, is the same as it would be at common law, where there are no degrees of murder, and, therefore, the response by the jury of "guilty," is a full answer, and covers murder in the first degree; and this is sought to be sustained by an *obiter* of Chief Justice Tighlman, in the case of *White vs. The Commonwealth,* reported in 6 *Binney,* 183, and because our act of 1809 is borrowed from that of Pennsylvania of 1794.

The case in which the distinguished chief justice dropped the *dictum* relied upon, did not involve the question, nor call for his opinion on the subject; and were it what counsel suppose it to be, whatever may be our respect for his views on a legal proposition, (and it is certainly very great,) we would not feel ourselves bound to conform to it. Nor, indeed, had it been directly raised in the case, could we, with our understanding of the language of the statute, unite in such construction. But the fact is, we do not concur with the counsel for the State, in the interpretation placed by them on the language of Chief Justice Tighlman. His language is not susceptible of such construction. It alluded to an indictment under the statute, and not at common law. In most of the States of this Union the act of Pennsylvania has been adopted in its very words; and we are not aware of any decision, in any of their courts of last resort, where it has been held not to be incumbent on the jury to find, distinctly and unequivocally, the degree of the murder. So far from it, there has been an unbroken uniformity of decision to the contrary.

We do not deem it essential to recapitulate the numerous cases in which the act has come under review. It is palpable to us that the true intent and purpose of the act, in this particular, were to impose upon the consciences of the jury the finding *in their verdict* (not therefrom to be inferred or conjectured) the degree of the crime; and when that part of the act is considered which refers to the case of the accused making,

Ford *vs.* The State.

in open court, a confession of guilt, it seems to us next to impossible that, on reflection, there should be any doubt on the mind of any one as to the proper interpretation of it.   In the case of the confession by the prisoner, it is the duty of the judge to examine witnesses, with the view of determining the degree of the crime, the commission of which is confessed. Why this, if the view of the counsel of the State be tenable? Most certainly the accused's own confession of "guilty" ought to be equally as strong against him as the finding of the jury of "guilty."   And yet it does not dispense with the examination of witnesses to fix the degree.   To state the point, is, in our judgment, to resolve the question involved in it.   We, however, refer to the opinion of Judge Bartley, in the case of *Dick vs. The State of Ohio*, reported in 3 *Ohio*, 89, *N. S.*, for a very clear and satisfactory determination of it.

Having, to our own satisfaction, settled the character of the finding which the act of Assembly requires in the case of conviction for murder, we proceed to notice some facts contained in the transcript of the clerk of the criminal court.

The verdict in the case, whatever it was, was rendered on the 4th of October 1858.   On the *rough minutes* of the court appears the following entry: "Oct. 4, 1858, verdict, guilty of murder.   Jury polled—Guilty of murder in the 1st degree." From affidavits filed in the case in the court below, it is obvious the words "jury polled—guilty of murder in the first degree," were not placed on the minutes until the 5th of October, out of the presence of the prisoner and of the jury.   Some of the bystanders, at the time of the rendition of the verdict, and the deputy clerk, who received it, make affidavit as to the words of the verdict, and the manner in which it was delivered and recorded.

The jury who tried the case also filed a certificate, stating their recollection of the words used, and their understanding of their meaning.   To all this the judge certifies, in his opinion, his knowledge of what occurred.   Without quoting the precise words used by the different persons who bear evidence in regard to the matter, we content ourselves by saying, that *there is not a single affiant or witness who states, nor does the*

69      v. 12.

*judge* state, that *each* and *all* of the jury, when *polled,* found a verdict of guilty of murder in the first degree.   It is clear that the foreman *alone* found such a verdict; all the rest simply responded "guilty," saying nothing of the degree of the murder.   The object of a poll of the jury, is to call on *each* juror to answer for himself, and in his own language.   In the case now under consideration, if we can look to the evidence, such was not, nor does any one pretend it was, done.   But it is said, we cannot look to the affidavits, *because* they are no part of the record, and that inasmuch as the extended or amended record is in due form, there cannot be any error of which this court can take notice, revise and correct.

Whatever doubt there may be in regard to the truth of the proposition, to the extent insisted upon, it is unquestionably correct to aver that *jurors* cannot be allowed to testify in relation to the motives upon which they joined in the verdict, and this is just what has been attempted here.   (See 5 *Bacon's Abridgement,* 393, *(N,)* and the numerous authorities there collected, and also the opinion of Judge Archer, in the case of *Bosley vs. The Chesapeake Insurance Co.,* 3 *G. & J.,* 473.) If a jury, through mistake or partiality, deliver an improper verdict, the court may, *before it is recorded,* desire them to reconsider it.   They cannot, however, be allowed to make alteration after the verdict is recorded.   *(Dearsby's Criminal Process,* 68; 81 *Law Lib.)*   And we here remark, that when the jury be asked if they have agreed on their verdict, and they respond that they have, and that their foreman shall say for them, and the foreman, *speaking for the whole panel,* find a proper verdict, and the same be recorded, the whole panel being called upon to *hearken to it* as the court hath recorded it, and no objection being made, either by any of the jury, or the counsel for the State or prisoner, then such proper verdict, as given through the foreman, is the verdict of the whole panel, and it is too late, after the record of it, under such circumstances, for any of them to alter or amend it; *it is* then too late to poll the panel.

It might be conceded, for the purposes of this appeal, that this court cannot take cognizance of the affidavits filed subse

quently to the verdict, and yet there may be sufficient, independently and outside of them, in the record, to require it to arrest the judgment. And this is our opinion of it, which relieves us from the necessity of inquiring into our right to weigh the evidence of the witnesses. We have carefully examined all the authorities cited at the bar, as well as others, and we have been unable to find any which precludes us from reversing the *judgment* of the court below, although there are many which deny to us the right to review its *reasoning* and *mere opinions.* Whatever assumes the solemnity of a *judgment* of a court of record, is part and parcel of the *record,* and examinable in the appellate tribunal on a writ of error. Not one of the cases cited on the part of the State, and so earnestly enforced by its counsel, questions, in any manner, this principle.

In all cases in which a judgment is to be pronounced in the progress of the case, such judgment, when rendered, becomes the act of the court, and is a matter of law, as well as were the premises on which it was rendered, matters of fact; and whilst the court of review cannot find the *facts,* yet when the facts are found by the court or the jury below, as the case may be, it is but its proper and legitimate province to see that the inferior court has pronounced correctly the *law* as applicable to the facts.

*Now what was the matter on which the court below decided?* It was alleged that the jury had not, in point of fact, found the verdict which the clerk had recorded, and whether they had, or had not, was the *precise* and *only* matter which the court was called upon, not argumentively, but *judicially,* to adjudge. And what did it adjudge? We throw out of view entirely all that was said by the witnesses and the clerk, and confine ourselves exclusively to the decision of the judge. It is in these words: "The court will finally proceed to consider the fact, whether the jury did, or did not, find the prisoner guilty of murder in the first degree, which (as Mr. Nelson says) settles the question. When the jury came into court, it was late in the evening, and Mr. Whitney, the prosecutor, was absent, on account of sudden indisposition, but the court supposed he was present to attend, as usual, to the rendition of

the verdict, according to the usual manner. The clerk asked the jury if they had agreed upon their verdict, and who should say for them, to which they responded they had agreed, and their foreman should say for them. Whereupon the clerk told the prisoner, calling by name William G. Ford, to stand and hold up his right hand, and requested the jury to look upon him, and then asked the jury: 'How say you, gentlemen, is Wm. G. Ford, the prisoner at the bar, guilty or not guilty?' To which the jury answered, 'Guilty,' and *nothing* more. Whereupon, and before any of the jury had left the bar, and whilst the prisoner was before them, Mr. Hack, one of the counsel for the prisoner, demanded that the jury should be polled. Whereupon the court directed Mr. Schley, the clerk, who was taking the verdict, to ask the jury, when he polled them, 'Whether they found the prisoner guilty of murder in the first degree, or murder in the second degree?' To which question, when it was put to the jury, the foreman answered for the jury, in the words, 'Guilty of murder in the first degree,' in an audible voice; and each of the remaining eleven jurors, when polled, responded, 'Guilty,' without specifying the degree of murder in words."

Thus, then, we see the judge below decides the facts to be, that *at no time did all* the jury find the prisoner "guilty of murder in the first degree." At first their foreman simply said, "guilty," for the whole panel; and when the latter was polled, so that *each* might answer for himself, eleven of them replied, severally, "guilty," *without specifying the degree in words*. Here, then, we have the fact plainly set forth, that William G. Ford was not, by all the jury, found guilty of murder in the first degree; but, nevertheless, the verdict, as extended and amended by the clerk of the criminal court, says he was so found guilty. And we are asked to decide that, although no such verdict was given, the judgment is correct, and the sentence should be carried out, and that we cannot look to the misprision of the clerk. The clerk is but the hand of the court, its amanuensis. It is his duty, in contemplation of law, to record nothing but the proceedings of the court.

Ford *vs.* The State.

The 19th article of the Declaration of Rights of Maryland, among other things, declares, that *every man* hath a right to be informed of the accusation against him, "and to a speedy trial by an impartial jury, *without whose unanimous consent he ought not to be found guilty.*" And in 10 *Bacon's Abridg. Title Verdict*, 306, it is correctly said: "The verdict is the *unanimous* decision made by a jury and reported to the court, on the matters lawfully submitted to them in the course of the trial." *Unanimity* is indispensable to the sufficiency of the verdict, and this, we have seen, has not been in the case before us. It will hardly be contended, that had the jury found the prisoner "*not* guilty," if the clerk had entered their verdict "*guilty*," instead of the true finding, that there is no mode of correcting such error. *Wherein does this supposed case differ in principle from the case now before us?* In nothing. The law says, that when a person shall be found guilty of the crime of murder, by a jury, the jury *shall, in their verdict,* find the degree; and this has not been done.

In the eye of the law, there has been no valid and sufficient verdict; and, as a consequence, there must be a new trial. This case is not like that of *Cochrane vs. The State*, 6 *Md. Rep.*, 400, where there was a necessity to find a new indictment, because of the defect in the one on which the accused was arraigned and tried. In this case there is no defect in the indictment, and the party can be tried again on it, as in the case of *The State vs. Sutton*, 4 *Gill*, 494. This was a mistrial, and a *venire de novo* must be awarded.

*Judgment reversed and procedendo awarded.*

(Decided January 24th, 1859.)