THOMAS DENNIS MALONEY, the younger, and
MALONEY ENTERPRISES, INC. *v.*
STATE OF MARYLAND

[No. 498, September Term, 1972.]

\* \* \*

ERNEST KELLER, the younger *v.* STATE
OF MARYLAND

[No. 500, September Term, 1972.]

*Decided April 26, 1973.*

610

The causes were argued before ORTH, C. J., and MORTON and SCANLAN, JJ.

In Appeals No. 498 and No. 500 *Frank G. Perrin* for appellants.

In No. 498 *George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edward F. Borgerding, Assistant Attorney General, Chief, Criminal Division, J. Thomas Caskey, Jr.,* and *Harry A. E. Taylor, Assistant Attorneys General,* on the brief, for appellee.

In No. 500 *George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edward F. Borgerding, Assistant Attorney General, Chief, Criminal Division, J. Thomas Caskey, Jr.,* and *James G. Klair, Assistant Attorneys General,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

I

*The Motions to Dismiss the Indictments*

On 6 July 1971 the State's Attorney for Charles County requested the Governor of Maryland to designate the

Attorney General of Maryland to conduct an investigation into "an apparent substantial overpayment in State and County funds to school bus contractors in Charles County" and to handle any further proceedings growing out of such investigation. On 12 July the Governor wrote the Attorney General:

> "I have decided to comply with the request of the State's Attorney. Therefore, in accordance with Article 5, Section 3, of the Maryland Constitution, I would appreciate it if you would conduct an investigation into this matter and institute any appropriate legal proceedings which may be warranted."

The result of the investigation by the Attorney General was a series of indictments charging the crimes of false pretenses and attempted false pretenses returned on 16 August by the Grand Jury for Charles County and filed in the Circuit Court for Charles County. Nos. 3858, 3859 and 3860 charged ERNEST KELLER, the younger, (Keller). Nos. 3846, 3847 and 3848 charged THOMAS DENNIS MALONEY, the younger, (Maloney). Nos. 3849, 3850 and 3851 charged MALONEY ENTERPRISES, INCORPORATED (the Corporation). Motions to dismiss the indictments were filed, by Keller on 15 November, and by Maloney and the Corporation on 17 November. The motions were heard by Mitchell, J. on 26 November and denied. Motions for rehearing were made on 1 December and denied on 6 December. The propriety of the denial of the motions to dismiss is before us.

The motions were grounded on the appearance of two Assistant Attorneys General, Edward F. Borgerding and George A. Eichhorn, III, before the grand jurors concerning the matter of the alleged overcharges on which they were to pass, aiding the jurors in the examination of witnesses and advising them on questions of law. There is no claim that they were present while the jurors were deliberating on the evidence or voting. It is not

disputed that Borgerding and Eichhorn were duly appointed Assistant Attorneys General, that the Attorney General assigned them the duty of conducting an investigation and instituting appropriate legal proceedings with regard to the matter designated by the Governor, and that, in performance of their assigned duty, they had attended the grand jury to aid in the examination of witnesses and advise it on questions of law. The query is whether they had the authority to do so.

The Attorney General has constitutional authority to appoint such number of deputies and assistants as the General Assembly may from time to time by law prescribe. Constitution of Maryland, Art. V, § 3. The General Assembly has authorized him to appoint certain designated assistants and "such additional assistants * * * as may from time to time be authorized in the budget." Each of the assistants serves "during the pleasure of the Attorney General" and takes no oath of office. Code, Art. 32A, § 6. See *Hammond v. Lancaster,* 194 Md. 462. The Attorney General, however, is expressly authorized by Code, Art. 32A, § 6, "* * * to assign to them and each of them the performance, subject to his discretion and control of any of the duties required of him by law." It follows, therefore, that Borgerding and Eichhorn could do, subject to the Attorney General's discretion and control, whatever the Attorney General could do in regard to the matter concerning the bus contractors.

The powers and duties of the Attorney General prescribed in Art. V, § 3 of the Constitution of Maryland include that "* * * when required by the Governor * * *, he shall aid any State's Attorney in prosecuting any suit or action brought by the State in any Court of this State, and he shall commence and prosecute or defend any suit or action in any of said Courts, on the part of the State, which * * * the Governor, acting according to law, shall direct to be commenced, prosecuted or defended * * *." The Governor, acting explicitly under this constitutional authority, directed the

Attorney General, by a written, definitive request, to commence and prosecute any action appropriate to the matter of the alleged overpayment in State and County funds to school bus contractors in Charles County, and to aid the State's Attorney for Charles County in any such action brought by the State. It is apparent that the investigation conducted by the Attorney General, through the two assistants, indicated that crimes had been committed. We find it to be clearly within the ambit of the constitutional provision that the authority of the Attorney General to "commence" an action includes his presence to attend the grand jury to aid in the examination of witnesses and advise on questions of law. Without this concomitant authority, the mandate to "commence and prosecute" any action which the Governor shall direct "to be commenced and prosecuted" would be sterile indeed. We refuse to construe the constitutional provisions requiring the Attorney General to commence and prosecute an action so narrowly as to preclude him from presenting the case to a grand jury. Under the constitutional provisions the Attorney General became the prosecuting officer in the cases before us. We are in accord with the generally prevailing opinion that the prosecuting officer may, and it is his duty as well as his privilege, attend on the grand jurors with matters on which they are to pass, aid in the examination of witnesses, and give such general instructions as they may require, without, however, being present while the grand jury is deliberating on the evidence or voting on a matter under investigation. 4 *Wharton's Criminal Law and Procedure*, § 1716 (1957). See *Grand Jury*, 38 Am. Jur. 2d §§ 34-35; *People v. Zara*, 255 N.Y.S.2d 43 (1964). Because the Attorney General was authorized to so appear before the grand jurors, Borgerding and Eichhorn could so appear. As we have concluded that the appearance of the Assistant Attorneys General before the Grand Jury for Charles County was authorized, their presence and participation had no adverse effect on the indictments returned. We hold that

the court below did not err in denying the motions to dismiss the indictments.

Both of the Assistant Attorneys General, before attending the grand jurors, were appointed Special Assistant State's Attorneys for Charles County and were administered the oath of that office. In view of our holding that their appearance before the Grand Jury as Assistant Attorneys General was authorized, we have no need to reach the question whether they were also so authorized in the capacity of Special Assistant State's Attorneys. We take the view that appointments of them as Special Assistant State's Attorneys were immaterial, and did not, in any event, render their appearance as Assistant Attorneys General improper.

## II

*The Prosecution of Keller*

*Polling the Jury*

Indictments Nos. 3858, 3859 and 3860, under which Keller was charged, were consolidated for trial. The trial was had before a jury in the Circuit Court for Charles County, commencing on 17 January 1972 and concluding on 21 January. At the close of all the evidence the State "abandoned" indictment No. 3858. The jury returned a verdict of guilty of obtaining (1st count of indictment 3860) and attempting to obtain (indictment 3859) certain monies from the Board of Education of Charles County (the Board) by a false pretense.[1] The transcript

---

1. Sentences were imposed on the convictions on 28 June 1972. As shown by the docket entries, the sentence under No. 3860 was that Keller "is committed to the Department of Corrections for a period of 2 years, but sentence is suspended and he is placed on probation without supervision upon the condition that he make restitution to the Charles County Board of Education in the amt. of $11,510.00 and pay a fine of $2,500.00 and costs in this case and in Cr. #3859, in 60 days from date and that the $8,487.00 which the Board of Education acknowledges to be due on the payment withheld be applied as a credit on the restitution ordered, and that the fine and restitution be made through the Dept. of Parole and Probation." The sentence under No. 3859 was suspended generally upon payment of costs.

of the proceedings shows the circumstances surrounding the rendering of the verdicts and the discharge of the jury:

"(Whereupon, at 10:00 o'clock p.m. the jury returned and announced their verdict in the criminal case 3859 of guilty and in Criminal No. 3860 announced the verdict of guilty, after which the jury was harkened to its verdict.)

MR. PERRIN [Defense Counsel]: Would Your Honor poll the jury?

THE COURT: I think it is too late, Mr. Perrin. They have been harkened to their verdict.

Mr. Ferrell [Official Court Reporter], did we find when we need the jury again?

THE REPORTER: Tuesday, Your Honor.

THE COURT: Ladies and gentlemen of the jury, who are on the regular panel, I will ask you to come back on Tuesday. Those who were called especially on this case may be permanently excused.

(Whereupon, after further discussion regarding bond, court was recessed at 10:07 o'clock p.m. from day to day.)"

On 31 January there was a hearing on Keller's motion for a new trial. At the hearing the trial judge said: "I think there can be no matter of the fact that as a matter of right under [Maryland Rule 758 d], the Defendant was entitled to have this jury polled. An obvious error on the part of the Court in ruling the way it did." The court attempted to salvage the trial.[2] "I really cannot see any prejudice that could be done by polling the jury at this time as to their verdict." Over the objection of Keller, the court directed the Clerk to have the jury returned on 2 February.

---

2. The court expressed its reasons: "To have a trial of this length and then go out on a simple error of procedure and perhaps it is not too late to correct, sort of goes against the grain of the Court, especially since it was our error."

On 2 February at a conference in chambers, the court put "formally in the record that the objection [of Keller] to bring the jury back for the purpose of taking the poll of the jury is overruled." Defense counsel then made a request:

> "Now, since they are coming back over my objection, I ask the Court before they are polled to ask them, I suppose it would be voir dire or whatever it may be, have they talked to anyone or read anything or anything about the case since they have been discharged and if they have been, I move that they not be polled because they cannot be legally and properly polled to protect the Defendant's rights if they have been exposed to comments since they have been discharged."

The court refused the request:

> "Well, I will not grant that request because I propose to tell them that we merely want to determine whether the verdict as was announced by the Foreman on the night it was announced was their verdict and that we are not concerned with any second thoughts they may have had or anything they may have heard or read about the case since that time."

The "special panel" [3] entered the courtroom and resumed their seats in the jury box. The Clerk called the

---

3. The docket entries read:
"January 17, 1972: * * * Forty Four Jurors including 7 Special Talismen were present & interrogated by Court on Voir Dire Questions submitted by State & Deft. Attys.
Thirty Three Jurors were excused for Cause and the eleven remaining Jurors were excused until January 18, 1972.
Court ordered summons issued for 30 additional Talismen from among alternate Jurors for appearance on Jan. 18, 1972 and summons issued by Clerk.
January 18, 1972: Trial Jury (J. Mitchell) resumed with selection of jury.
Twenty additional Talismen were present.
Nine of the additional Talismen were excused by Court for cause after examination by Court on Voir Dire.
Special Panel with 2 alternate Jurors was selected from 22 Jurors found qualified by Court."

roll and ascertained that the twelve jurors composing the special panel of 21 January 1972 were present. The court addressed the jury:

"Madam Foreman and ladies and gentlemen of the jury, first I want to apologize for bringing you out on this snowy, slushy morning. I especially apologize because you were brought back here today because of an error on my part. You will recall that you heard these cases against Mr. Keller, Ernest Keller, Jr., during the week of January 17 through the 21st, that you reached a verdict on the night of the 21st. The Foreman announced the verdict and then the Clerk went through the normal routine which is merely to say, repeated the verdict as announced by the Foreman and said to the rest of the members of the jury, so say you all.

That is what is called harkening to the verdict.

I believe you then all sat down and you will recall Mr. Perrin, counsel for the Defendant, then asked for a poll of the jury and my decision was that it was too late.

I find that I was in error on that decision, that used to be the rule but it is not any more. The jury should have been polled. The purpose of polling a jury is merely to determine whether or not the verdict as announced by the Foreman is the unanimous verdict of the members of the jury because, as you know, the verdict must be unanimous for a conviction in a criminal case.

So you were brought back today to have the Clerk poll you as to your verdict at the time it was given. We are not concerned with whether you have had second thoughts as to the verdict that was given on the night of January 21st. We will poll you as to your decision, your verdict, as of the time it was announced.

There were two cases as you will recall, one case No. 3860 charged Mr. Keller with false pretenses with respect to dealings with the Charles County Board of Education. The other case, No. 3859, charged him attempted false pretenses.

With that explanation I will ask the Clerk to now poll the jury."

The Clerk said: "Ladies and gentlemen, as your name is called will you please stand." He called the name of the foreman and said: "Mrs. Colley, as Foreman of the special panel, you announced that the verdict of the jury in Case No. 3859 and 3860 was guilty in each case. Is that your verdict?" Mrs. Colley answered: "Yes." He then called the name of the remaining jurors one by one, and as each juror stood the Clerk said: "The Foreman of the jury announced that the verdict of the jury in Case No. 3859 and 3860 was guilty in each case. Is that your verdict?" Each juror replied that it was. Thereupon the Clerk said:

"Ladies and gentlemen, harken to your verdict as the Court had recorded it. Your Foreman announced that the verdict of the jury in Criminal Cases 3859 and 3860 was guilty in each case and so say you all."

The court "permanently excused" the members of the special panel who were not "regular jurors" and excused the others until the next day.

It is obvious that the trial judge, in refusing Keller's request to have the jury polled, believed that the request was not timely made because the verdict had been hearkened. The Court of Appeals said in *Ford v. State,* 12 Md. 514, 546-547:

"And we here remark, that when the jury be asked if they have agreed on their verdict, and they respond that they have, and that their

> foreman shall say for them, and the foreman, *speaking for the whole panel,* find a proper verdict, and the same be recorded, the whole panel being called upon to *hearken to it* as the court hath recorded it, and no objection being made, either by any of the jury, or the counsel for the State or prisoner, then such proper verdict, as given through the foreman, is the verdict of the whole panel, and it is too late, after the record of it, under such circumstances, for any of them to alter or amend it; it is then too late to poll the panel."

See *Hommer v. State,* 85 Md. 562, 564. Cf. *Williams v. State,* 60 Md. 402. This was clearly not the law, however, at the time of the trial of Keller, and had not been the law in any event since 1 January 1957, the effective date of Maryland Rule 758 d.[4] That Rule, subtitled, "Poll of Jury", provides:

> "When a verdict is returned and before the jury is discharged it shall be polled at the request of a party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged."

Under the Rule the criterion for timeliness of the request to have the jury polled is not the hearkening of the jury and recordation of the verdict but the discharge of the jury from its consideration of the case. The trial judge, as he ultimately recognized, was wrong in refusing to grant Keller's request. The question is whether, in the totality of the circumstances, the judge's error requires reversal of the judgments. This inquiry embraces two interrelated matters: (1) the nature of the poll of the jury, and (2) the effect of the poll belatedly made over Keller's objection.

---

4. The source of this rule is Rule 40 d of the "Uniform Rules of Criminal Procedure" drafted by the National Conference of Commissioners on Uniform State Laws.

## (1)

The right to a trial by an impartial jury is guaranteed to an accused in all criminal prosecutions by both the federal constitution [5] and the Maryland Constitution. The constitution of this State goes a step beyond the federal constitutional right. It requires that the verdict of the jury be unanimous.[6] The Court of Appeals early found that an accused in a criminal prosecution is "entitled, as a matter of right, to a poll of the jury" and he may not be convicted, "except upon the concurrence of each juror." [7] *Williams v. State, supra,* at 403. See *Givens v. State,* 76 Md. 485, 488. In *Coby v. State,* 225 Md. 293, 299, the Court stated that "the defendant had the absolute right to poll the jury." It noted that the effect of the polling of the jury is a means of establishing that the verdict was with the unanimous consent of the jurors.[8] We think that this absolute right of the accused to have the jury polled serves to assure him his constitutional

5. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . ." Amendment VI, Constitution of the United States.

6. By Article 21 of the Declaration of Rights of the Constitution of Maryland the People of the State of Maryland declared "That in all criminal prosecutions, every man hath a right . . . to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."

7. It seems that the polling of the jury had its genesis in the common law. "Now touching upon the giving up of their verdict, if the jury say they are agreed, the court may examine them by poll, and if in truth they are not agreed, they are fineable." 2 *Hale's Pleas of the Crown* 299. See *Hochheimer's Criminal Law,* § 328 (14th Ed.). For the procedure in polling the jury see *Biscoe v. State,* 68 Md. 294, 298, which was approved in *Coby v. State,* 225 Md. 293. See also *Heinze v. State,* 184 Md. 613, 620.

8. Although the Court thought that the trend away from the "individual juror" charge was proper and that an instruction advising the jury that a defendant ought not to be found guilty without the unanimous consent of all the jurors or words to that effect constituted sufficient compliance with the constitutional guarantee, it pointed out that the polling of the jury was also a means of establishing the fact that a verdict is that of each juror. 225 Md. at 298-299. "The object of a poll of the jury, is to call on *each* juror to answer for himself, and in his own language." *Ford v. State, supra,* at 546. See *Hommer v. State, supra,* at 563-564.

right to be convicted only upon the unanimous consent of the jury. To that extent, it is of constitutional dimension.[9]

## (2)

Having found that the refusal of the trial judge to have the jury polled as requested wrongfully denied Keller an absolute right, we next consider whether the error was rendered harmless by the subsequent action of the court.

"The wrongful denial of a demand or request for a poll of the jury, or the deprivation of the right to a poll by other wrongful action of the court, has generally been held to constitute prejudicial error, entitling the defendant to a new trial or a reversal of the conviction." 5 *Wharton's Criminal Law and Procedure*, § 2142 (1957); Anno: *Accused's Right to Poll of Jury*, 49 A.L.R.2d § 9. In *Commonwealth v. Martin*, 109 A. 2d 325 (Pa. 1954), as in the case before us, the court denied the defendant's request that the jury be polled for the reason that the request had come too late, but the request, in fact, was timely made.[10] The court held, at 327: "The action of the court in such regard worked a denial of a right of the accused so fundamental as to require a re-

9. As we have observed, note 7 *supra,* the authority of the court in its discretion to have the jury polled on its motion derived from the common law. This authority is now spelled out in Rule 758 d, which also authorizes the State to have the jury polled and implements the constitutional right of the accused to be convicted only upon the unanimous consent of the jury by mandating a poll of the jury at his request. Of course, even a constitutional right may be waived. "While it is true that a prisoner is entitled, as a matter of right, to a poll of the jury, yet it is a right that can be waived, and a failure to make the demand at the proper time, that is, before the verdict has been recorded, is equivalent to a waiver." *Hommer v. State, supra*, at 564. Since the adoption of Rule 758 d the proper time is after the verdict and before the jury is discharged. In the circumstances of the instant case, there is no question of a waiver of the right to have the jury polled.

10. The request was made before the verdict was recorded. The appellate court, however, noting that some cases and text writers have stated that the procedure for polling the jury requires that the request be made before the verdict was recorded, observed that "Trial courts, where the 'practice in the oyer and terminer' has for the most part been developed, have permitted a poll of the jury after the verdict has been recorded." 109 A. 2d at 328.

trial even though, as clearly appears from the record, the trial was otherwise markedly free from error and the jury's verdict was fully warranted by the evidence. Yet, it is better that the case be tried again than that a precedent impairing a defendant's right to a poll of the jury be engrafted on our criminal procedure."

Wharton states: "A wrongful denial of the demand or request may, however, be rendered harmless by other circumstances or by curative action." 5 *Wharton's Criminal Law and Procedure*, § 2142. He cites as authority for this statement two cases, which are also relied on by the State, *People v. Nichols*, 62 Cal. 518 (1881) and *Russell v. State*, 68 Ga. 785 (1811). In *Nichols*, the California Penal Code required that the verdict of a jury be read before it was recorded and before the verdict was recorded, the jury could be polled at the request of either party. There was a palpable irregularity in the court's refusing to have the verdict read before it was recorded, but after it was recorded the court directed the jury be polled. The jury was polled, each answered that the verdict was his, and the jury was then discharged. The court held that the error did not compel reversal: "It seems to us that the right of polling was in effect and substantially accorded to the defendant." 62 Cal. at 521. In *Russell*, the defendant made timely request upon the rendering of the verdict to have the jury polled. Each juror was asked "Is this or not your verdict?" and replied in the affirmative except juror No. 3, whose name was not called. The jurors were discharged and dispersed with the crowd, but none had gone past the outer door of the court when the attention of the court was called to the omission. The court reassembled the jury, directed the clerk to call the name of the No. 3 juror, which was done, and the court asked him "Is this or not your verdict?" which being answered "yes", the verdict was recorded and the defendant sentenced. The Supreme Court of Georgia affirmed the judgment:

> "We recognize fully the legal right of the defendant to demand the polling of the jury in

all criminal cases, unless by his act or consent inconsistent with such right he has waived or surrendered it, and on demand made for the polling of a jury, the legality of such verdict is only completed by the poll. We further recognize it as true that when a jury has been discharged, and dispersed, and mingled with the crowd, it is too late to cure an omission to poll by re-assembling the jury for that purpose. . . . The right to poll a jury is a legal one and the refusal is error. . . .

But, conceding these propositions to be true, has not the accused had his full legal rights accorded to him as to polling the jury, under the facts of this case? Here, eleven jurors are inquired of as to their consent to the verdict, and acquiesce therein by their answer. They are discharged, but before any had gone beyond the outer door, and while the juror, who had not been questioned, continued in the presence of the court, the retiring jurors who had already answered, were recalled, placed in the box and the omitted juror required to reply as the others had previously done, to the questions propounded. We cannot imagine how this mere inadvertence, so promptly corrected on being discovered, could possibly have affected the result to the prisoner, but on the other hand, he had accorded to him substantially his right of polling, and thus verifying the verdict rendered. It is not to be understood that the enforcement of the criminal law is to be thwarted or evaded by mere slight irregularities in the procedures of courts if its forms have been substantially complied with, and it is apparent from the facts, that in these slight irregularities the defendant has been denied no legal right to a fair and impartial trial. The criminal law of our state has, in tenderness to the life

and liberty of the citizen accused of crime, thrown around him every safeguard to secure him a public, speedy and impartial hearing, according to the forms of law, and when these have been substantially accorded him and none denied him, let him therewith be content to atone in its penalties for its infraction by him. We conclude that the ground complained of here scarce amounts to a slight irregularity— none such, at least, as in our opinion calls for correction on our part by awarding a new trial. We rest this judgment, affirming the judge below upon the distinct ground that the juror who had not been polled had remained in presence of the court unaffected by his discharge or his surroundings." 68 Ga. 788-789.

*Nichols* and *Russell* are readily distinguishable from the case before us. In *Nichols* the jury had not been discharged. In *Russell,* eleven of the jurors had been polled before the jury was discharged, the juror who had not been polled remained in the presence of the court until he was polled and was found to be unaffected by his discharge or his surroundings. Neither case is authority for what the trial court did here. The *Keller* jury was discharged and the jurors dispersed before any juror had been polled. They were not reassembled until some 12 days later. The short of it is that at the time they were reassembled they no longer constituted a jury to be polled because they had been discharged and dispersed. One of the objects in polling the jury is to enable a juror to correct a verdict about which, on further consideration, he has doubt, and to declare in open court his judgment *in praesenti.* The fact that a juror had voted for the verdict returned does not preclude him from repudiating the verdict upon the poll of the jury. Ordinarily, the polling of the jury is the only way to determine the adherence of the jurors to the verdict. 5 *Wharton's Criminal Law and Procedure,* § 2142 (1957).

What the procedure followed by the trial court amounted to was to obtain an unsworn statement from each juror almost two weeks after the jury was discharged that he agreed to the verdict. This was not enough to cure the lack of a timely poll and we find that the error in refusing to have the jury timely polled was not cured by the subsequent action of the court. The effect was that Keller was effectively denied his absolute right to have the jury polled and to have each juror assent to the verdict. The Court of Appeals decided in 1893 that the right to have the jury polled should be continued and not changed, and that upon a denial of the right, the judgment must be reversed and a new trial awarded. *Givens v. State, supra,* at 488. We do not find that the Court of Appeals has departed from this view. We reverse the judgments against Keller with the grant of a new trial.

## III

Keller presents seven other questions for appellate review. As we have reversed the judgments we need consider only that one claiming that the indictments are invalid because it is material to a retrial.

Keller contends that indictments 3859 and 3860 are invalid because each presents that the offense charged, attempted false pretenses in 3859 and false pretenses in 3860, was committed from 1 September 1970 to 30 June 1971. He urges that this is vague, ambiguous and duplicitous because it charges more than one offense in one count. He supports the contention with *Stearns v. State,* 81 Md. 341, and *State of Maine v. Smith,* 61 Me. 386 (1872). We see nothing vague and ambiguous about the indictments. In each the crime is designated, the time during which it was committed alleged, the amount obtained specified and the statute violated set out. We note further that Keller demanded a bill of particulars and in answer the State furnished comprehensive information. Nor are the indictments duplicitous. *Stearns*

*v. State, supra,* held that separate crimes cannot be charged disjunctively or in the alternative. This was not done here. *State of Maine v. Smith, supra,* does not support Keller's contention. It held that two or more substantive offenses cannot be joined in the same count, but when several acts relate to the same transaction and together constitutes but one offense, they may be charged in the same count. It is when two or more independent offenses are joined in the same count, that it is bad for duplicity. 61 Me. at 389. We find that the indictments were not invalid as duplicitous. See *State v. Carter,* 200 Md. 255; *Kirsner v. State,* 183 Md. 1; *Delcher v. State,* 161 Md. 475; *Morrissey v. State,* 9 Md. App. 470. We hold that the court below did not err in denying the motion to dismiss the indictments on the ground that they were vague, ambiguous, or duplicitous.

Keller also makes the flat statement that "the law and rules do not allow the statutory form for attempts (Art. 27, Sec. 609)." The statute provides: "In any indictment, information or warrant for false pretenses, it shall not be necessary to state the particular false pretenses intended to be relied on in proof of the same . . ." It gives a formula which it shall be sufficient substantially to use. Indictment 3859 was to the effect of the formula set out in the statute except that it added the word attempted with respect to the false pretense. Keller cites no authority for his claim that the particular false pretenses intended to be relied on must be stated in a charge of attempted false pretenses. We believe that it was the legislative intent to have the formula set out sufficient to charge attempted false pretenses as well as false pretenses. We find that indictment 3859 adequately charged the offense of attempted false pretenses.

Keller further states: "The two charges upon which each defendant was convicted cover the same time and same offense and a person cannot be convicted on both." Keller was the only defendant convicted under indictments 3859 and 3860. In any event, it is clear that the offense of which he was found guilty under indictment

3859 was separate and distinct from the offense of which he was found guilty under indictment 3860. Under 3860 it was shown he obtained certain monies by a false pretense; under 3859 certain monies which he attempted to obtain by a false pretense were not received by him.

## IV

### The Prosecution of Maloney and Maloney Enterprises, Inc.

Upon motion of the State indictments 3846, 3847 and 3848, charging Maloney, and indictments 3849, 3850 and 3851 charging the Corporation, were consolidated for trial. Trial was had without a jury in the Circuit Court for Charles County, commencing on 24 April 1972 and concluding on 25 April 1972. Maloney was found guilty of obtaining (1st count of indictment 3848) and attempting to obtain (indictment 3846) certain monies from the Board by a false pretense.[11] The sentence on the conviction under indictment 3848 was that Maloney "would pay a fine of $2500.00 and costs, that he would be confined under the Department of Corrections for a term of two years time, but that is suspended under the condition of the payment of the fine and costs and an adjustment of the transaction between the Board of Education and the Defendant which would reflect payment of the $7623.00 [obtained by the false pretense] and not be paid the $847.00 which involved in the amount that is still held and that that amount be adjusted accordingly." The sentence on the conviction under indictment 3846 was suspended generally. The Corporation was found guilty of obtaining (1st count of indictment 3851) and attempting to obtain (1st count of indictment 3850) certain monies from the Board by a false pretense.[12] The sentence on the conviction under indictment 3851 was that the Corporation "pay a fine of $2500.00

---

11. A verdict of not guilty was found as to indictment 3847 because it was cumulative with the 1st count of indictment 3848.

12. A verdict of not guilty was found as to indictment 3849 because it was cumulative with the first count of indictment 3851.

and costs. This will be suspended, however, by the payment of fine and costs by the individual Plaintiff, it being the intention that both the corporation and the . . . individual Defendant are . . . guilty, that the $2500.00 is imposed against each but upon payment of the individual of the fine it would be abated by the corporation." The sentence on the conviction under indictment 3850 was suspended generally.

Attacking the judgments on appeal, Maloney and the Corporation, in addition to the question disposed of in part I of this opinion, contend that:

(1) the indictments and counts used for conviction were invalid;
(2) they were prejudiced by the consolidation for trial of the indictments charging Maloney with the indictments charging the Corporation;
(3) the charges should be dismissed because there was no showing that the Board was a corporation;
(4) the court erred in not ruling on a motion for a speedy trial;
(5) the State "deliberately prejudiced the judge and infringed [their] rights";
(6) the evidence was not sufficient to sustain the convictions.

### (1)

This contention is identical with that made by Keller and disposed of in part III hereof. The indictments against Maloney and the Corporation were valid as drawn for the same reasons the indictments against Keller were valid as drawn.

### (2)

The docket entries show that on 24 April 1972 the State moved to consolidate for trial the indictments

against Maloney and the Corporation, that defense counsel objected and that the motion for consolidation was granted. A transcript of the proceedings wherein this was done is not included in the record before us. Maryland Rule 734 provides: "The court may order two or more indictments to be tried together if the offenses and the defendants, if there be more than one, could have been joined in a single indictment." Maloney and the Corporation do not claim that they and the offenses charged could not have been joined in a single indictment and we think that they could have been. Maloney and the Corporation participated in the same series of acts or transactions constituting the offenses. Rule 716, §§ a and b. See *Wilson, Valentine and Nutter v. State,* 8 Md. App. 653.

Maloney and the Corporation claim, however, that they were prejudiced by the consolidation. Rule 735 provides: "If it appears that an accused or the State will be prejudiced by a joinder of offenses or of defendants in an indictment, or by joinder for trial together, the court may order an election or separate trials of counts, grant separate trials of defendants or provide such other relief as justice requires." Whether or not to order separate trials is in the sound discretion of the trial court. *Jennings v. State,* 8 Md. App. 312. The allegations of prejudice here are in the main bald allegations, lacking specificity and are not adequate to show an abuse of discretion.[13]

Under separate heading reference is made to State's Exhibit 5, the "Payroll Information Sheet" with the claim that it should not have been admissible against Maloney because the witness testifying with regard to

---

13. The brief reads:
"Both defendants were permanently injured and prejudiced by the arbitrary consolidation and say:
 (1) Evidence admissible against one defendant was not relevant to the second defendant.
 (2) The privileges and immunities of one defendant to a specific evidentiary point did not apply to the second defendant and yet this evidence was considered against both."
This is not explained.

it did not think that it was in Maloney's writing and was not certain he brought it in. Although objection was made to the introduction of this evidence it was not on the ground that it was inadmissible as to Maloney. Defense counsel objected for the reason that the document had not been properly proved. "He hasn't been clear whether he is introducing it on personal knowledge of this witness or under some other form." The court ruled it had been properly proved and overruled the objection. We see no error in the ruling. It was brought out on cross-examination that the witness was not sure whether the document was in the handwriting of Mr. Maloney or Mrs. Maloney, but the witness, on further cross-examination, remembered a conversation with Franklin Olmstead, then acting as attorney for Maloney, in which she told him that it was probably brought in by Maloney; that Mrs. Maloney may have been with him; "seems most likely Dennis [Maloney] would have brought it in but I can't swear to it. . . ." There was no suggestion made that the evidence be limited to the Corporation. In any event, on the cross-examination of Warren H. Deyermond, a witness for the defense, who had been Supervisor of Transportation for the Board, it was adduced that the Payroll Information Sheet had been "worked up" with Maloney. We believe that the exhibit was properly admissible as to Maloney.

It is also stated in the brief: "State's witness Mrs. Bridges turned her miles into Mrs. Maloney and not admissible as such against the individual." The point is not further discussed. Mrs. Bridges, a bus driver, testifying on behalf of the State, said she turned her mileage in to Mrs. Maloney. There was no objection made to this testimony nor was there a request that it be received only as to the Corporation.

Under the question of consolidation it is finally stated in the brief:

"The individual defendant would not have been required to put on any defense, but was

> bound by any harmful testimony on cross-examination of defense witnesses and harmed by the prejudicial conduct of State toward one defense witness. The same applies to the corporation."

Whatever this may mean, neither it nor the other points made regarding the matter are sufficient in the circumstances for us to find that the trial court abused its discretion in consolidating the indictments for trial.[14]

### (3)

Maloney and the Corporation now claim that it was not shown that the Board was in fact a body corporate as alleged in the indictments.

Code, Art. 77, § 35 A concerns the Board of Education for Charles County. It contains provisions for the composition of the Board, the election of its members, their terms, their compensation, and its functions, by-laws and meetings. It states in subsection e: "Except as in this section provided, the other provisions of this article apply to the Board of Education of Charles County." Another provision of Article 77 which applies to the Board of Education for Charles County is § 38. It reads:

> "The county board of education is hereby declared to be a body politic and corporate by the name and style of the Board of Education of ............ ... . County, and by that name shall have perpetual succession, and shall be capable to sue and be sued, to use and to have a common seal, and the same at their pleasure

---

14. Each of Maloney and the Corporation filed a pretrial motion for the State's Attorney to elect "upon which count in the indictment or upon which count in all the indictments in the event the cases are consolidated in the above entitled case he will proceed to trial . . . ." At the close of the State's case defense counsel stated for the record that ". . . in behalf of both defendants and all six indictments and the counts, that we abandon our motion to elect."

to alter or break, and to exercise all the powers and privileges hereby granted to or vested in them."

No showing of corporate identity was necessary under the statute. The contention that it was not shown that the Board was a body corporate is without merit.

### (4)

Maloney and the Corporation filed a pretrial motion to dismiss the indictments for lack of a speedy trial. The State answered the motion. On the date set for trial, but before the trial commenced, the motion was heard. The docket entries state that arguments were made but they are not included in the record before us, nor does the record indicate that the defense offered evidence on the matter. The transcript of the proceedings reflects that the court reserved its ruling on the motion. Trial proceeded and concluded. Maloney and the Corporation assert: "Neither the transcript nor the docket entries show, nor did the Judge in fact ever rule upon this Motion." This statement is not correct. There is in the record before us an order of the trial court filed on 2 May 1972 in Criminals Nos. 3846, 3847 and 3848, reading as follows:

"Whereas the Court withheld its ruling upon the Defendant's motion entitled 'Motion to Dismiss Indictments and Charges Because of Deliberate Failure to Provide Speedy Trial and to Afford Defendant His Constitutional Rights to Prepare a Defense and Have a Valid Indictment and Trial on the Merits' until all the evidence in the case had been presented at trial, it is this 2nd day of May 1972, ORDERED that said motion of Defendant be denied."

The transcript of the proceedings which were had on 2 May 1972 show that the court said: "While counsel are here, there was submitted at the Court's request by

the State—and I discussed this with defense counsel— an order overruling the motion to dismiss the indictments because of failing to have a speedy trial, and those are being filed." No objection appears to have been interposed by defense counsel.

As the contention is grounded only on the incorrect premise that no ruling was made, it fails.

### (5)

The claim that the State deliberately prejudiced the judge and infringed the rights of Maloney and the Corporation stems from an incident which occurred during the examination of Deyermond. In the course of direct examination, the State was granted permission to approach the bench and the witness was requested to step down. The prosecutor said: "If Your Honor please, the State at this point feels in light of the past testimony of Mr. Deyermond in prior cases and in light of the testimony he has given now, he may be laying himself open to possible prosecution for a conspiracy to take money . . . We are going to suggest that he possibly be advised of his Fifth Amendment privilege." The court felt that no action was required by it. The trial proceeded. No objection of any kind was made by the defense. In the course of cross-examination of Deyermond, the State asked him if he had received any financial assistance from Maloney with respect to the leasing of his gas station during the past six months or the past twelve months. He replied that he had not. No objection was made to the questions.

The short answer to the contention is that the matters of the trial judge being prejudiced and the rights of Maloney and the Corporation being infringed were not tried and decided below and are not properly before us. Rule 1085. In any event, we do not believe that the judge was thereby prejudiced, deliberately or otherwise, nor do we believe that any rights of Maloney and the Corporation were infringed in either regard.

## (6)

Maloney and the Corporation urge that the evidence was insufficient to sustain the convictions and that the verdicts were against the weight of the evidence. Of course, the weight of the evidence was for the trier of fact and is not within the scope of our review. *Cook v. State,* 9 Md. App. 214.

In *Polisher v. State,* 11 Md. App. 555, 560, we said that the crime of false pretenses, proscribed by Code, Art. 27, § 140, is committed when a person:

1) by making a false representation of a past or existing fact;
2) with intent to defraud; and
3) knowledge of its falsity;
4) obtains any chattel, money or valuable security from another;
5) who relies on the false representation;
6) to his detriment.

An attempt to commit an offense is a common law misdemeanor. *Fisher v. State,* 1 Md. App. 505. It consists of an act, done in pursuance of criminal intent falling short of the actual commission of the crime, coupled with at least an apparent ability to commit the intended crime. *Farley v. State,* 3 Md. App. 584. See *Wiggins v. State,* 8 Md. App. 598; *Makins v. State,* 6 Md. App. 466; *Price v. State,* 3 Md. App. 155; *Boone v. State,* 2 Md. App. 80.

The charges against Maloney and the Corporation were based upon the allegation that they submitted false time and mileage figures to the Board under a contract to run private school buses for Charles County, the false figures resulting in overpayments to them.

As to indictment 3848 charging Maloney with the crime of false pretenses and as to indictment 3851 charging the Corporation with that crime the trial court found that:

1) there were made "numerous false represen-
   tations as to both mileage and time and on
   the information supplied to the contracting
   party, which was the responsibility of both
   the defendant individual and corporation,"
   there being "excess mileage and excess time
   in a number of those cases";

2) mileage and time being a factor in the
   formula in determining the amount the con-
   tractor was to receive, the purpose of the
   false representations was that if the infor-
   mation submitted were accepted and not
   changed, "the defendants would profit by
   that" and thus there was an intent to de-
   fraud;

3) "the defendants knew that the figures that
   were given were in most instances exces-
   sive";

4) for a period of nine months checks were re-
   ceived in payment of the contract based on
   the formula which included the false infor-
   mation;

5) money was paid by the Board in reliance on
   the false mileage and time figures;

6) the Board paid money which was not due.

Therefore, the court found, each of the elements of the crime of false pretenses had been established.

With regard to indictments 3846, charging Maloney with attempted false pretenses, and indictment 3850, charging the Corporation with that crime, the trial court found that the crime was not consummated because the Board did not make the tenth payment due under the contract. It is implicit that the court determined that Maloney and the Corporation attempted to have that payment made through the false representations.[15]

---

15. In reaching one of its findings the trial court referred to "a fair preponderance of the evidence." In the proceedings of 2 May 1972, he made clear that this was mere inadvertence. "Well, of course, I meant beyond a reasonable doubt since it was a crimi-

When the court is the trier of fact, we may not set aside its judgment on the evidence unless clearly erroneous. Rule 1086. We have reviewed the evidence adduced and have no difficulty in determining that there was legally sufficient evidence supporting the findings of the trial judge. The credibility of the witnesses, as well as the weight to be given the evidence, were matters for the trier of fact. *Fulford v. State*, 8 Md. App. 270. There being evidence sufficient in law to sustain the verdicts, the court below was not clearly erroneous, and the judgments stand. *Williams v. State*, 5 Md. App. 450.

> *As to Ernest Keller the younger: judgments in criminals 3859 and 3860 reversed; cases remanded for a new trial; costs to be paid by Charles County.*
>
> *As to Thomas Dennis Maloney the younger and Maloney Enterprises, Inc.: judgments in criminals 3846, 3848, 3850 and 3851 affirmed; appellants to pay costs.*

---

nal trial, and if what I said was 'preponderance of the evidence', I would correct that and say that I was convinced beyond a reasonable doubt as to the presence of all the elements in the case."