JÓHN BENJAMIN BISCOE *vs*. STATE OF MARYLAND.

*Criminal law—Jurisdiction—Offence committed on the Pó-*
*tomac . river — Counties — Territorial divisions — Circuit*
*Courts of Counties bordering on the Potomac river—Re-*
*moval of Case—Suggestion and Affidavit—Order of Re-*
*moval—Verdict—Polling of the Jury.*

The Circuit Court for St. Mary's County has jurisdiction to try a party indicted in said Court for the murder of a citizen of Maryland, alleged to have been commited on the Potomac river, opposite said county.

The counties of the State are but territorial divisions established for public and local purposes connected with the administration of the government; and the Circuit Courts for the several counties lying on the Potomac river, as Courts of record having original jurisdiction, exercise a common law jurisdiction over offences committed on said river opposite the shores of such counties. As such Courts, they exercise all the common law powers of the Court of King's Bench in England, except in so far as such powers may have been modified by the change in our form of government, or restricted by constitutional or legislative enactment.

A party indicted for murder in the Circuit Court for St. Mary's County, made application for the removal of his case to some other Court for trial. The order for removal directed the record to be sent to Charles County, instead of directing it to be sent to the Circuit Court for that county. HELD:

1st. That the order read in connection with the application for removal, must be construed as an order for the removal of the record to the Circuit Court for Charles County, and that Court acquired jurisdiction.

2nd. That the Circuit Court for Charles County having thus acquired jurisdiction of the case, it was too late for the prisoner to withdraw his application and affidavit for removal, a term of Court having elapsed after the removal of the record.

After the jury had through their foreman declared the prisoner to be guilty of murder in the first degree, he demanded a poll of the jury. The foreman, on being asked by the clerk: "What say you, is the

Biscoe *vs.* State.

prisoner guilty of the matter whereof he stands indicted, or not guilty?" answered: "Guilty of murder in the first degree." Each of the remaining jurors was in turn asked: "Did you hear your foreman's verdict?" and he answered: "I did." He was then asked: "Is his verdict your verdict?" and he answered: "It is." HELD:

That when the foreman had declared the prisoner to be guilty of murder in the first degree, and each juror when called declared the verdict thus rendered by the foreman to be his verdict, it was equivalent to a declaration on the part of each juror that the prisoner was guilty of murder in the first degree.

APPEAL as upon WRIT OF ERROR from the Circuit Court for Charles County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*Daniel R. Magruder,* for the plaintiff in error.

*Charles B. Roberts, Attorney-General,* for the defendant in error.

ROBINSON, J., delivered the opinion of the Court.

The plaintiff in error, was indicted in the Circuit Court for St. Mary's County, for the murder of a citizen of Maryland, alleged to have been committed on the Potomac river, opposite said county; and the main question in this appeal, is whether the Circuit Court of that county had jurisdiction of the offence?

This jurisdiction is denied on the ground that the boundary of St. Mary's County as defined by the Act of 1695 (ch. 13) runs with the shore of the Potomac, but does not include any part of the river itself. At the same time, it is admitted that the Courts of that county have from the passage of that Act to the present time, a period of nearly

two hundred years, exercised jurisdiction over offences committed on said river, and that its exercise is now, for the first time, questioned.    If the objection thus made be well founded, it seems strange, to say the least, that it should during all this time have escaped the attention of all the lawyers and Judges of both the Provincial and State Governments.    We do not, however, rest our decision in favor of the jurisdiction claimed by the State on this ground. The error which runs through the argument of the counsel for the prisoner is the assumption that the Circuit Court was without jurisdiction in the premises, because the boundary line of St. Mary's County runs with, but does not include, the Potomac river.    Now by the charter granted to Lord Baltimore the Potomac river belongs to the State of Maryland, and over it the State has always exercised jurisdiction, except so far as the exercise of its jurisdiction was restricted by the compact of 1785 with the State of Virginia.    The counties of the State are but territorial divisions established for public and local purposes connected with the administration of the government, and the Circuit Courts of the several counties lying on the Potomac river, as Courts of record having original jurisdiction, exercise a common law jurisdiction over offences committed on said river, opposite the shores of such counties.    As such Courts, they exercise all the common law powers of the Court of King's Bench in England, except so far as such powers may have been modified by the change in our form of government, or restricted by constitutional or legislative enactment.    In the earlier years of the Provincial Government the criminal jurisdiction of the County Courts was, it is true, limited to the trial of certain offences, and the Provincial Court, afterwards known as the General Court, exercised exclusive jurisdiction in capital cases; but so far back as 1773, concurrent jurisdiction with the Provincial Court over all crimes and offences was conferred on the County Courts.    And then by the subsequent Act of

1801, chap. 74, sec. 37, the concurrent jurisdiction of the General Court over criminal cases was taken away, and from that time to the present the County Courts and the Circuit Courts, their successors, have exercised exclusive criminal jurisdiction. And the Potomac river being part of the State, and subject therefore to its jurisdiction, the Circuit Courts of the several counties bordering on said river, as common law Courts, exercise criminal jurisdiction over offences committed on said river opposite such counties. And the exercise of this jurisdiction was recognized by the Legislature in ratifying the compact made with the State of Virginia, for although jurisdiction was in a certain class of offences conceded to that State, yet it provided that offences committed by citizens of Maryland against its own citizens, should be tried by the Courts of this State having jurisdiction over such offences. And it is well known that the County Courts of the several counties lying on the Potomac, at that time exercised a common law jurisdiction over offences committed on its waters opposite such counties. We have then by the Act of 1785, chap. 1, a recognition of the jurisdiction of these counties over offences committed on the Potomac river, if any such recognition be needed.

We pass then to the objection to the jurisdiction of the Circuit Court for Charles County, the Court to which on the application of the plaintiff in error, the case was removed, and in which he was tried and convicted of murder in the first degree. And here the jurisdiction of that Court is denied because the order for removal directed the record to be sent to *Charles County*, instead of directing it to be sent to *the Circuit Court* for that county. The order of removal, must of course designate *with certainty* the Court to which the record is sent, and to avoid all question in this respect, it would have been better if the order in this case had directed the record to be sent to the Circuit Court for that county. But the Circuit Court is the only Court in that county having jurisdiction to try the case, and the

only Court in that county to which the record could have been sent. Besides, the order was passed on the affidavit and application of the plaintiff in error for the removal of the case to the Circuit Court of some other county, and when the order is read in connection with the application for removal, it must and can only be construed as an order for the removal of the record to the Circuit Court for Charles County. This being so, there was no necessity of remanding the record to the Circuit Court for St. Mary's County for the purpose of amending the order, by inserting "*the Circuit Court*," even if the Court had the power under the Act of 1809, ch. 90, sec. 10, to make such amendment, a question in regard to which we express no opinion. The Circuit Court for Charles County having thus acquired jurisdiction of the case, and a term of Court having elapsed since the removal of the record, it was too late for the prisoner to withdraw his affidavit and application for removal.

We come then to the objection to the verdict. The plaintiff in error after the jury had through their foreman declared him to be guilty of *murder in the first degree*, demanded a poll of the jury. The name of the foreman was called, and he was asked by the clerk, "What say you is the prisoner guilty of the matter whereof he stands indicted or not guilty?" to which he answered, "*guilty of murder in the first degree.*" The next juror was then called and he was asked by the clerk, "*Did you hear your foreman's verdict?*" He answered, "*I did.*" He was then asked, "Is his verdict your verdict?" to which he answered, "It is." The same questions were propounded to each of the remaining jurors, and to which each made the same response. Now when the foreman had declared the prisoner to be guilty of murder in the first degree, and then each juror when called declared the verdict thus rendered by the foreman to be his verdict, it was equivalent to a declaration on the part of each juror, that the prisoner was guilty

of murder in the first degree. And this is all the law requires.

<div style="text-align:center">

*Judgment affirmed, and
cause remanded.*