472 A.2d 988

**Kevin Bernard SMITH**

v.

**STATE of Maryland.**

**No. 124, Sept. Term, 1983.**

Court of Appeals of Maryland.

April 3, 1984.

**162**

Julia A. Doyle, Asst. Public Defender (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Retired, Specially Assigned Judge.

CHARLES E. ORTH, Jr., Retired, Specially Assigned Judge.

Kevin Bernard Smith was tried by a jury in the Criminal Court of Baltimore (now the Circuit Court for Baltimore City) on charges that he committed the crimes of murder in the first degree (the first count of indictment no. 18136309), robbery with a deadly weapon, and using a handgun in the commission of a crime of violence, (the first and eighth counts respectively of indictment no. 18136310). The court declared a mistrial as to all three charges on the ground that the jury was unable to reach unanimous verdicts. Smith was promptly retried before a jury, which found him not guilty of the murder charge and guilty of the armed robbery and handgun offenses. He was sentenced to a total of 35 years. The Court of Special Appeals affirmed the judgments in an unreported opinion (*Smith v. State*, No. 1687, September Term, 1982, filed 1 August 1983). We granted Smith's petition for a writ of certiorari, and ordered that the record and proceedings be certified to us, but we limited our review solely to the question whether Smith was placed twice in jeopardy by the retrial. The resolution of this question depends on whether the verdicts of the jury at the

first trial as presented to the court reflected an actual agreement of the jury and represented a final acquittal on the charges.[1]

## I

In *Pugh v. State,* 271 Md. 701, 319 A.2d 542 (1974), we found it to be "settled that once the trier of fact in a criminal case, whether it be the jury or the judge, intentionally renders a verdict of 'not guilty,' the verdict is final, and the defendant cannot later be retried on or found guilty of the same charge."[2]  *Id.* at 706, 319 A.2d 542.  We must determine what is sufficient to constitute the intentional rendition of a *final* verdict by a jury.

### (a)

### *Unanimity of the Verdict*

The underlying requirement of a final verdict is that it be unanimous.  "[T]he People of the State of Maryland" declared in what is now Article 21 of the Declaration of Rights of their Constitution: "That in all criminal prosecutions, every man hath a right . . . to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty."  This Court explicated this constitutional declaration in *Ford v. State,* 12 Md. 514 (1859):

" 'The verdict is the *unanimous* decision made by a jury and reported to the court, on the matters lawfully submitted

---

1.  Smith presented the question in his petition in these words: "Did Petitioner's retrial on charges as to which unanimous verdicts of not guilty had been rendered place him twice in jeopardy for the same offenses?"  The question as phrased assumes the rendition of unanimous verdicts of not guilty.  But whether the verdicts were unanimous and duly recorded as such is the real issue in this appeal.  Smith recognized this in the argument in his petition and in his brief.

2.  Further proceedings in such circumstances are barred by the federal Constitution's Fifth-Fourteenth Amendment double jeopardy clause ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . .") and by the Maryland common law prohibition against double jeopardy.  *See Pugh v. State,* 271 Md. 701, 704–706, 319 A.2d 542 (1974) and *Block v. State,* 286 Md. 266, 268, 407 A.2d 320 (1979).

to them in the course of the trial.' *Unanimity* is indispensable to the sufficiency of the verdict...." *Id.* at 549, quoting 10 *Bacon's Abridg. Title Verdict,* 306 (emphasis in original).[3]

The constitutional provision is implemented by Maryland Rule 759 a, which flatly states: "The verdict of a jury shall be unanimous...."

### (b)

### *Hearkening the Verdict*

Lewis Hochheimer, Esq., immortalized as a member of the Baltimore bar by his book on criminal law published at the turn of this century, had this to say about the rendition and receiving of a jury verdict in a criminal case: "The verdict must be given and received in the presence of the accused, ... in open court, all the jurors being present...." L. Hochheimer, *The Law of Crimes and Criminal Procedure* (2d ed. 1904) § 179. *Hochheimer* warns that "[t]he prescribed formulas must be substantially complied with." *Id.*

The formula for the rendition of verdicts is set out in *Givens v. State,* 76 Md. 485, 25 A. 689 (1893):

"When the jury have come to a unanimous determination with respect to their verdict, they return to the box to deliver it. The clerk then calls them over, by their names, and asks them whether they agree on this verdict, to which they reply in the affirmative. He then demands who shall say for them, to which they answer, their foreman. This being done, he desires the prisoner to hold up his right hand and addresses them: 'Look upon the prisoner at the bar; how say you, is he guilty of the matter whereof he indicted or not guilty?' The foreman then answers guilty or not guilty, as the verdict may be. The officer then writes the word 'guilty' or 'not guilty' as the verdict is, on the record and again addresses the jury: 'Hearken to your verdict as the court hath recorded

---

**3.** The right to a unanimous verdict, however, may be duly waived. *State v. McKay,* 280 Md. 558, 566–572, 375 A.2d 228 (1977).

it. You say that _____ is guilty (or not guilty) of the matter whereof he stands indicted, and so say you all.' " [4] *Id.* at 487, 25 A. 689.

This is in substance the formula stated by *Hochheimer* § 179. Although there is no reference in the Maryland Rules of Procedure about "hearkening," the procedure detailed in *Givens* is substantially that followed today. In *Glickman v. State,* 190 Md. 516, 525, 60 A.2d 216 (1948), we observed that the procedure whereby the clerk calls upon the jury to hearken to their verdict when they return to the court to render it, is "uniformly practiced in the courts of Maryland. . . ." We quoted with approval what was said in *Givens* 76 Md. at 486, 25 A. 689: "And while it may be a matter of form and practice, yet it is a juridical form; and matters of form when they become established, and are supported by reasons of justice and propriety, are regarded as matters of substance." [5] *Glickman* 190 Md. at 525, 60 A.2d 216. *See Heinze v. State,* 184 Md. 613, 616–617, 42 A.2d 128 (1945); *Ross v. State,* 24 Md.App. 246, 252–255, 330 A.2d 507 (1975), *rev'd on other grounds,* 276 Md. 664, 350 A.2d 680 (1976). "It is to secure certainty and accuracy, and to enable the jury to correct a verdict, which they have mistaken, or which their foreman has improperly delivered, that they are called upon to 'hearken thereto.' " *Givens,* 76 Md. at 488, 25 A. 689.

(c)

*Polling the Jury*

■ A defendant has the absolute right to poll the jury. *Coby v. State,* 225 Md. 293, 299, 170 A.2d 199 (1961). *Coby*

---

4. *Givens v. State,* 76 Md. 485, 487, 25 A. 689 (1893) observes, "While this form is applicable to felonies, yet it applies to all criminal cases, omitting that part 'look upon the prisoner at the bar' in other cases than felonies."

5. *Glickman v. State,* 190 Md. 516, 527, 60 A.2d 216 (1948) noted that the omission of the words "as the court hath recorded it" was a mere matter of immaterial form. "The important matter of substance is that all the jurors assented to the verdict in the manner in which it had been stated by the foreman and accepted by the Court." *Id.*

merely iterates what this Court asserted a century ago in *Williams v. State,* 60 Md. 402, 403 (1883): "[A defendant is] entitled, as a matter of right, to a poll of the jury, and he [may] not be convicted, except upon the concurrence of each juror." *See Hochheimer* § 179.

A poll of the jury serves the same purpose as that of hearkening the verdict. *Givens,* 76 Md. at 487, 25 A. 689. "[I]t has never been the law in Maryland that hearkening is *the* prerequisite to an acceptable verdict where the jury has been polled. In other words it has not been doubted that polling is a fully commensurable substitute for hearkening." *Ross,* 24 Md.App. at 254, 330 A.2d 507. It is in the absence of a demand for a poll that a hearkening is required for the proper rendition of a verdict.

Under our practice the hearkening of a verdict is the traditional formality announcing the recording of the verdict. A jury poll has the same effect. *Id.*

The poll of the jury is an effective way to determine the adherence of the jurors to the verdict. 5 *Wharton's Criminal Law and Procedure* § 2142 (1957). The polling provides a means of establishing that the verdict was with the unanimous consent of the jurors.[6] *Maloney v. State,* 17 Md.App. 609, 622, 304 A.2d 260, *cert. denied, Keller v. State,* 269 Md. 761, *cert. denied, Maloney v. State,* 269 Md. 762 (1973).

It once was that a demand to poll the jury had to precede the recordation of the verdict upon a hearkening. Once the verdict was hearkened it was "too late to poll the panel." *Ford,* 12 Md. at 546. The right to a poll was deemed to have been waived by the failure to demand it at the proper time, that is before the verdict had been effec-

---

**6.** Since the right of a defendant to have the jury polled serves to assure him his constitutional right to be convicted only upon the unanimous consent of the jury, it is, to that extent, of constitutional dimension. *Maloney v. State,* 17 Md.App. 609, 622–623, 304 A.2d 260, *cert. denied, Keller v. State,* 269 Md. 761, *cert. denied, Maloney v. State,* 269 Md. 762 (1973).

tively hearkened. *Hommer v. State,* 85 Md. 562, 564, 37 A. 26 (1897).[7]  This rule persisted until 1 January 1957, the effective date of what is now Rule 759 e of the Maryland Rules of Procedure.[8]  The common law right to have the jury polled,[9] recognized in *Williams* a hundred years ago and recalled by *Hochheimer,* is perpetuated in Rule 759 e, but without the limitation expressed in *Ford* and *Hommer.*  Md. Rule 759 e provides:

"Upon the request of a party or upon the court's own motion, the jury shall be polled after it has returned a verdict and *before the jury is discharged.*  If upon the poll the jury do not unanimously concur in the verdict, the court may direct the jury to retire for further deliberation or may discharge the jury."  (Emphasis supplied).

It is readily apparent on the face of the Rule that the criterion for timeliness of a demand to have the jury polled is no longer the hearkening of the verdict to the jury and the ensuing recordation.  Rather, it is the discharge of the jury from its consideration of the case.  *Maloney,* 17 Md. App. at 621, 304 A.2d 260.  In other words, after the verdict is rendered, either party, or the court *sua sponte,* may have the jury polled at any time before the jury is discharged.

■ "The assent of each juror [polled] must be free and unqualified."  *Hochheimer* § 179.  "We all know that jurors sometimes, upon the poll, dissent from the verdict declared for them by their foreman, and it is for the purpose of compelling each juror to declare his own verdict, in his own

---

**7.**  We need not consider whether such a waiver would stand muster under today's standards, because, as we shall see *infra,* Maryland Rule 759 e renders the issue moot.

**8.**  Present Md.Rule 759 e was formerly Rule 758 d.  Its source was Rule 40 d of the "Uniform Rules of Criminal Procedure" drafted by the National Conference of Commissioners on Uniform State Laws.

**9.**  The genesis of the polling of the jury in the common law is apparent from 2 Hale's Pleas of the Crown 299 (1847): "Now touching the giving up of their verdict, if the jury say they are agreed, the court may examine them by poll, and if in truth they are not agreed, they are fineable."

language, that a poll of the panel is allowed." [10]   *Williams,* 60 Md. at 403.

### (d)
### *The Finality of the Verdict*

Until the case is removed from the jury's province the verdict may be altered or withdrawn by the jurors, or by the dissent or non-concurrence of any one of them.   While the case is still within the province of the jury, the court may permit them to reconsider and correct the verdict, provided nothing be done amounting to coercion or tending to influence conviction or acquittal.   *See Hochheimer* § 179. In the absence of a proper demand to have the jury polled, the hearkening and ensuing acceptance of the verdict finally removes the matter from the jury's consideration.   But, despite a hearkening, if a demand for a poll is duly made thereafter, it is the acceptance of the verdict upon the poll that removes the verdict from the province of the jury.   In other words, the jury has control of the verdict until it is final.   Absent a demand for a poll, the verdict becomes final upon its acceptance when hearkened.   When a poll is demanded, the verdict becomes final only upon its acceptance after the poll.

When our opinions in cases decided prior to the adoption of what is now Rule 759 e are considered in the light of the Rule, their rationale remains sound.   We stated in *Givens* "that until the assent of the jury is expressed [by a hearkening], or by a poll, the jury has a right to retract, and that the verdict is not perfected until after the jury has expressed

---

**10.**   When the foreman has announced the verdict, it is sufficient if each of the other jurors when polled declares the verdict thus rendered by the foreman to be his verdict.   This is the equivalent of a declaration on the part of each juror that the defendant was guilty (or not guilty) as stated by the foreman.   "And this is all the law requires."   *Biscoe v. State,* 68 Md. 294, 298–299, 12 A. 25 (1888). *Coby v. State,* 225 Md. 293, 299, 170 A.2d 199 (1961), approved the *Biscoe* rule.   *Accord, Strong v. State,* 261 Md. 371, 373–374, 275 A.2d 491 (1971), *vacated in part, Strong v. Maryland,* 408 U.S. 939, 92 S.Ct. 2872, 33 L.Ed.2d 760 (1972).

their assent in one of these ways." *Id.* 76 Md. at 487, 25 A. 689. *See Hechter v. State,* 94 Md. 429, 50 A. 1041 (1902) (jury cannot be allowed to make alteration after the verdict is recorded). We summed up this rule in *Heinze v. State,* 184 Md. 613, 42 A.2d 128 (1945):

> "It is a fundamental principle that the verdict of a jury in a criminal case has no effect in law until it is recorded and finally accepted by the court.... Until the announcement that the verdict has been recorded, the jury have the right to amend or change any verdict; and when it is so amended it is the real verdict of the jury and it may be properly accepted by the court." *Id.* at 616-617, 42 A.2d 128.

*Accord, Glickman,* 190 Md. at 526, 60 A.2d 216. It follows that:

> "Any member of the jury has the right *sua sponte* to dissent from the verdict as announced by the foreman at any time before it is recorded and affirmed by the jury. *Heinze* 184 Md. at 616, 42 A.2d 128; *Glickman* 190 Md. at 526, 60 A.2d 216."

It is only if no objection "is made by any of the jurors or by the State or the accused [that] the verdict as announced is the verdict of the whole panel; and it is then the duty of the clerk to record the verdict and have it affirmed by the jury in the presence of the court" by hearkening the jury to their verdict or, when required, by polling the jury. *Heinze* 184 Md. at 616, 42 A.2d 128; *Glickman* 190 Md. at 526, 60 A.2d 216.

■ Thus it is that the basic teachings of *Ford* and its progeny are not disturbed by Rule 759 e. The Rule does no more than change the common law as to the finality of a judgment when, in the face of a completed hearkening, there is a demand for the jury to be polled.

■ Of course, neither hearkening nor polling cures a verdict that is defective when it is hearkened or polled in its defective form. *Williams,* 60 Md. at 403-404; *Ford,* 12 Md. at 547-549. We declared in *Heinze,* 184 Md. at 617, 42 A.2d

128, and reiterated in *Glickman,* 190 Md. at 525, 60 A.2d 216, that

> "[w]here a verdict is ambiguous, inconsistent, unresponsive, or otherwise defective, it is the duty of the trial judge to call the jury's attention to the defect and to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation." [11]

*Heinze* notes a caveat:

> "The law does not permit the judge to suggest the alteration of a verdict in substance. He must not throw the weight of his influence into the deliberations of the jury as to matters exclusively within their province." *Id.* 184 Md. at 618, 42 A.2d 128.

## II

### *The Facts*

The facts leading to the declaration of a mistrial are as follows. As we have seen, the case went to the jury on three charges, murder in the first degree (the first count of indictment no. 18136309), robbery with a deadly weapon (the first count of indictment no. 18136310), and the use of a handgun in the commission of a crime of violence (the eighth count of that indictment). To appreciate the full flavor of what occurred when the jury returned to the courtroom to deliver their verdicts, we deem it necessary to set out the transcript of the proceedings verbatim.

---

11. *Heinze v. State,* 184 Md. 613, 42 A.2d 128 (1945) suggested the procedure to be followed in such circumstances:

> "If a verdict is defective merely in form, and the meaning of the jury is clear, it is proper for the judge to suggest the correction in the presence of the accused without requiring the jury to return to their room." *Id.* at 618, 42 A.2d 128.

The Court added a warning:

> "When, however it becomes necessary to amend a verdict in substance, it is the safer practice to send the jury back to their room with instructions as to the corrections that ought to be made, so that they can amend the verdict as they think proper unhindered by the presence and possible influence of others." *Id.*

THE COURT: Members of the jury, have you agreed upon a verdict?

THE JURY: Yes.

THE CLERK: Who shall say for you?

THE JURY: Forelady.

THE CLERK: Madam Forelady, will you stand? (Complies.) What is your verdict in the State of Maryland v. Kevin Bernard Smith, Indictment 18136309, as to the first count, charging murder in the first degree, felony murder?

THE FORELADY: Not guilty.

THE CLERK: In Indictment 18136310, first count, charging robbery with a deadly weapon?

THE FORELADY: Not guilty.

THE CLERK: As to the eight count, charging use of a handgun in the commission of a crime of violence?

THE FORELADY: Guilty.

MR. LESSER [Assistant State's Attorney]: Your Honor, could we poll the jury as to the first two counts?

THE COURT: Would you poll the jurors, please? Repeat the verdicts and poll the jury.

THE CLERK: Madam Forelady, you may be seated. The verdicts are, in Indictment 18136309, as to the first count, charging murder in the first degree, felony murder, not guilty. As to Indictment 18136310, first count, charging robbery with a deadly weapon, not guilty. Guilty of the eighth count and in the same indictment charging use of a handgun in the commission of a crime of violence.

MR. LESSER: Your Honor, could we do the individual charges when we poll the jury?

THE COURT: I trust all the jurors understand that you have announced a verdict in which you have found the defendant not guilty of the murder and robbery, and guilty of the use of a handgun. Is that what you understand the verdicts to be?

Madam Forelady, would you stand again, please. The court and the clerk understood that your verdicts are unanimous verdicts. That is, all 12 of you had agreed that

the defendant was not guilty of murder, not guilty of robbery; but guilty of using a handgun in the commission of a crime of violence. Is that a correct record of your decision?

THE FORELADY: Well, they understood, well, I guess.

THE COURT: Well, all right. Then, Mr. Clerk, you will poll each of the jurors and as to each of the counts.

THE CLERK: Juror No. 2, will you stand. Are those your verdicts?

THE COURT: Are those your verdicts, Juror No. 1?

THE CLERK: You have heard the verdicts—

THE COURT: Because of this confusion, why don't you take No. 1 as well as the others.

THE CLERK: Start with 1 over again?

THE COURT: Yes.

THE CLERK: Madam Forelady, will you stand. The verdict in Indictment 18136309 as to the first count is not guilty. The Verdict in Indictment—

THE COURT: Is that your verdict, madam?

THE FORELADY: You mean personally?

THE COURT: Ladies and gentlemen, as to the forelady and as to all of you, the court has tried to advise you, and I thought you understood that whatever verdict is reached as to any of the three charges, had to be reached individually by each one of the 12 before you had a verdict. It is not a majority verdict. It is not 11 to 1, 10 to 2 or any other number. Each of the 12 of you personally must agree as to any verdict that you reach. Now, Madam Forelady, when you are asked whether it is your verdict, it is either your verdict or it is as to each of those counts. And that goes for each of the other jurors here. Now, the clerk just asked you if it was your verdict as to murder in the first degree, is it or is it not?

THE FORELADY: Yes.

THE CLERK: In Indictment 18136310—

THE COURT: You don't have to say the number of the indictment.

THE CLERK: First count, charging robbery with a deadly weapon, what is your verdict?

THE FORELADY: Not guilty.

THE CLERK: As to the eighth count, charging the use of a handgun in the commission of a crime of violence?

THE FORELADY: Guilty.

THE CLERK: Juror No. 2, you have heard the verdicts as announced by your forelady. Are your verdicts the same as hers?

JUROR NO. 2: Yes. They are.

THE CLERK: Juror No. 3, will you stand.

THE COURT: As to each of the three charges.

THE CLERK: As to each of the three.

JUROR NO. 2: As she stated, that is right.

THE CLERK: No. 3, you have heard the verdicts as announced by your forelady. Are your verdicts the same as hers?

JUROR NO. 3: No. They are not, first count.

THE COURT: Mr. Clerk, I have requested you to poll the jury as to each one of the three counts. Would you do that?

THE CLERK: As to the first count, charging murder in the first degree, your verdict?

JUROR NO. 3: Not guilty.

THE CLERK: As to the first count, charging robbery with a deadly weapon, what is your verdict?

JUROR NO. 3: Not guilty.

THE CLERK: As to the eighth count, charging use of a handgun, in the commission of a crime of violence, what is your verdict?

JUROR NO. 3: Not guilty.

THE CLERK: Juror No. 4, what is your verdict as to the first count charging murder in the first degree, felony murder?

JUROR NO. 4: Not guilty.

THE CLERK: As to the first count, charging robbery with a deadly weapon?

JUROR NO. 4: Not guilty.

THE CLERK: As to the eighth count, charging use of a handgun in the commission of a crime of violence?

JUROR NO. 4: Not guilty.

THE COURT: Before you continue, Mr. Clerk, we will have to send the jurors back upstairs and they have announced a unanimous verdict, but they haven't reached one.

MR. COCOROS [Defense Counsel]: But there are unanimous verdicts as to two charges.

THE COURT: I am not speaking of those, Mr. Cocoros.

MR. LESSER: Your Honor, I want the jury polled as to those two charges also, murder and armed robbery.

THE COURT: Proceed.

THE CLERK: Juror No. 5, will you stand. What is your verdict as to murder in the first degree, felony murder?

JUROR NO. 5: Not guilty.

THE CLERK: As to robbery with a deadly weapon?

JUROR NO. 5: Not guilty.

THE CLERK: As to the use of a handgun in the commission of a crime of violence?

JUROR NO. 5: Guilty.

THE CLERK: Juror No. 6, what is your verdict in the first count, charging murder in the first degree, felony murder?

JUROR NO. 6: Not guilty.

THE CLERK: Robbery with a deadly weapon?

JUROR NO. 6: Not guilty.

THE CLERK: Use of a handgun in the commission of a crime of violence?

JUROR NO. 6: Guilty.

THE CLERK: Juror No. 7, will you stand, please. What is your verdict as to the first count, charging murder in the first degree?

JUROR NO. 7: Not guilty.

THE CLERK: The first count, charging robbery with a deadly weapon?

JUROR NO. 7: Not guilty.

THE CLERK: Eighth count, charging use of a handgun in the commission of a crime of violence?

JUROR NO. 7: Guilty.

THE CLERK: You may be seated. Juror No. 8, what is your verdict as to the first count, charging murder in the first degree?

JUROR NO. 8: Not guilty.

THE CLERK: First count, charging robbery with a deadly weapon?

JUROR NO. 8: Not guilty.

THE CLERK: Eighth count, charging the use of a handgun in the commission of a crime of violence?

JUROR NO. 8: Guilty.

THE CLERK: Juror No. 9, what is your verdict as to the first count, charging murder in the first degree, felony murder?

JUROR NO. 9: Not guilty.

THE CLERK: First count, charging robbery with a deadly weapon?

JUROR NO. 9: Not guilty.

THE CLERK: Eighth count, charging using a handgun in the commission of a crime of violence?

JUROR NO. 9: Not guilty.

[THE CLERK:] What is your verdict as to the first count, charging murder in the first degree, felony murder?

JUROR NO. 10: Not guilty.

THE CLERK: First count, charging robbery with a deadly weapon?

JUROR NO. 10: Not guilty.

THE CLERK: Eighth count, charging using a handgun in the commission of a crime of violence?

JUROR NO. 10: Not guilty—guilty.

THE CLERK: Juror No. 11, what is your verdict as to the first count, charging murder in the first degree?

JUROR NO. 11: Not guilty.

THE CLERK: The first count, charging robbery with a deadly weapon?

JUROR NO. 11: Not guilty.

THE CLERK: Eighth count, charging using a handgun in the commission of a crime of violence?

JUROR NO. 11: Not guilty.

THE CLERK: Juror No. 12, what is your verdict as to the first count charging murder in the first degree?

JUROR NO. 12: Not guilty.

THE CLERK: The first count, charging robbery with a deadly weapon?

JUROR NO. 12: Not guilty.

THE CLERK: Eighth count, charging the use of a handgun in the commission of a crime of violence?

JUROR NO. 12: Not guilty.

MR. LESSER: Your Honor, may we poll Juror No. 1 who was hesitant?

THE COURT: Do you want to be polled again, Juror No. 1?

JUROR NO. 1: Okay.

THE CLERK: Juror No. 1, what is your verdict, as to the first count, charging murder in the first degree?

JUROR NO. 1: Guilty.

THE COURT: Go ahead.

THE CLERK: First count, charging robbery with a deadly weapon?

JUROR NO. 1: Guilty.

THE CLERK: Using a handgun in the commission of a crime of violence?

JUROR NO. 1: Guilty.

Not surprisingly, there was a bench conference at this point. The court and defense counsel were in accord with the assertion of the Assistant State's Attorney that "[t]here is confusion. There is no agreement as to any verdict." The judge indicated that she would allow the jury to disperse for the weekend and would call them back the following Monday "to try to sort it out." Defense counsel did not object to the jury returning for further deliberations so that "a verdict in the case," could be obtained, but he did object to a

"hung jury." The judge decided "to leave the jury intact and tell them to come back Monday morning." In the meantime, she would decide what was the proper action to take. She gave the jury the usual precautions and permitted them to go home.

When the jury reconvened, the judge had them return to the jury room at 10:20 a.m. to resume their deliberations. At 12:45 p.m. the jury announced that they had been unable to reach a unanimous verdict on any of the three charges. The judge declared a mistrial.

The confusion in the attempts to render a verdict was foreshadowed by what occurred before the jury indicated that they had agreed upon a verdict. The transcript of the proceedings shows that the jury retired for consideration of their verdict at 2:55 p.m. At 4:00 p.m. they asked the court to explain the instructions it had given concerning the use of a handgun in the commission of a crime of violence. The jury were brought back, and the court gave a further charge as requested. The court then made "an informal inquiry" of the forelady "as to how you are doing up there." The forelady replied, "I mean, it is going not well." The jury retired for further deliberation at 4:05 p.m. At 5:55 p.m. the court had the jury return to the courtroom and asked them if any progress was being made. The forelady answered, "No. It's very definitely a stalemate. I mean, people are very intense." Upon further inquiry the forelady indicated that the jury had not "been able to unanimously agree upon a verdict as to any of the charges." The court instructed the jury to continue deliberations, and according to the transcript, the jury retired for further consideration of their verdict at 6:00 p.m. At 7:15 p.m. they indicated that they had agreed upon a verdict, and the attempts to receive it began.

### III

*The Application of the Law to the Facts*

The forelady first announced the verdicts of the jury to be not guilty of the murder and robbery charges and guilty of

the weapon charge. On the first poll of her, she verified (albeit not without uncertainty) that the verdicts as she had announced them were her verdicts. On the poll of the other eleven jurors, each of them said that his verdict was not guilty on the murder charge and on the robbery charge. But on the weapon charge, five of the eleven jurors gave a verdict of not guilty and five of them gave a verdict of guilty. The remaining juror initially said that his verdict was not guilty but then promptly changed it to guilty. When the forelady was polled a second time because she "was hesitant" on the first poll, she declared her verdict to be guilty on each of the three charges.

Smith asserts that his appeal "turns upon whether once the first poll had been concluded verdicts of not guilty had been rendered on the first two counts," which we take to mean the murder charge and the armed robbery charge. He then looks to *Givens* as holding that "once the assent of the jury is expressed by a poll, the verdict of the jury is perfected," and to *Pugh* as holding that when the verdict is so perfected it is "final and the defendant cannot later be retried on or found guilty of the same charge." He claims that these cases support his conclusion that he "could not be retried on either the charge of murder or armed robbery." [12]

■ It is perfectly obvious that the jury did not reach a unanimous final verdict on any of the three charges before them. The verdicts which were initially announced by the forelady as being the verdicts of the jury were never even hearkened, and, in any event, were undermined by the subsequent polling. The verdicts with respect to the murder charge and the armed robbery charge, which as given on the first polling were unanimous (the verdict on the weapon

---

12. Smith challenges only the judgment entered on the armed robbery charge, declaring that "his conviction of armed robbery cannot stand." As we have seen, on retrial, he was found not guilty of murder, but he does not argue that if the retrial on all three charges was indeed error, it was so prejudicial *as to require the reversal also* of the judgment entered on the handgun charge. Ambiguously, he calls upon this Court to "reverse the judgment of the court below."

charge was in total disarray), were never accepted as the verdicts of the jury, and, on the second polling of the forelady, proved not to be the agreement of all twelve jurors.

We find no error on the part of the judge in permitting the forelady to be polled a second time at the request of the State. We first note that the forelady, upon inquiry by the judge, indicated that she wanted to be polled again and that defense counsel interposed no objection. The forelady's response to the first poll was not entirely free of equivocation, ambiguity and evasiveness. The judge was in a position of assessing this initial response of the juror, giving due consideration to her demeanor, appearance and tone of voice. The judge apparently believed that the first poll did not reflect the forelady's true intent, and we cannot say that allowing the second polling was an abuse of judicial discretion. We observe that there is not the slightest indication that the judge in any way did anything amounting to coercion or tending to influence the verdict.

The short of it is that, in the circumstances, the verdicts were in the province of the jury until the jury were discharged upon their inability to agree. The trial judge has a wide discretion in the conduct of a trial. The exercise of that discretion will not be disturbed unless it has been clearly abused. *Poole v. State,* 295 Md. 167, 180, 453 A.2d 1218 (1983); *Wilhelm v. State,* 272 Md. 404, 413, 326 A.2d 707 (1974). There was an aura of confusion hovering over the entire attempt to receive the verdicts of the jury. The judge did not abuse her judicial discretion when she sent the jury back to the jury room for further deliberation.

The verdicts of the jury as presented to the trial court did not reflect an actual agreement of the jury and did not represent a final acquittal on any of the charges. It follows that Smith was not placed twice in jeopardy by the retrial which came about by reason of the jury's failure to

agree on their verdicts.  *See Cornish v. State,* 272 Md. 312, 318, 322 A.2d 880 (1974).

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.

COSTS TO BE PAID BY PETITIONER.